#### AND IN THE

## SUPERIOR COURT, COURT OF OYER AND TERMINER AND COURT OF GENERAL SESSIONS

#### OF

## DELAWARE,

### BEGINNING JANUARY, 1911.

---

GEORGE H. BROOKS, defendant below, plaintiff in error, *vs.* THE STATE OF DELAWARE, upon the relation of ROBERT H. RICHARDS, Attorney General, plaintiff below, defendant in error.

1. PROCESS—EXEMPTION FROM SERVICE.

The exemption from service of civil process accorded to parties to judicial proceedings, witnesses, attorneys, judges, jurors, and court officers, while going to the place where the proceedings are held, and remaining there while necessary, and returning, is limited to those persons whose duty requires their attendance on the court, and whose presence is necessary to the court in administering justice.

2. PROCESS—EXEMPTION FROM SERVICE.

The president of a corporation, who attends a hearing in court in a suit, in which the corporation is a party, but who is not a witness and can give no testimony, and who can only render assistance to the solicitor for the corporation, is present in the capacity of an agent of the corporation, and is not exempt from service of civil process.

3. QUO WARRANTO—INFORMATION IN NATURE OF QUO WARRANTO.

An information in the nature of *quo warranto* is a part of the common-law remedies brought over by the early settlers, and which by statutory and constitutional enactments, beginning in 1736 and concluding with the existing Constitution, was, by the general adoption of the powers of the King's Bench, made a part of the civil law of the state.

4. QUO WARRANTO—NATURE OF WRIT.

A writ of *quo warranto* was at common law in the nature of a writ of right for the king, against him who claimed or usurped any office, privilege, franchise, or liberty, to inquire by what authority he supported his claim to the right.

1

5. COMMON LAW—ENGLISH STATUTES—ADOPTION.

*St. 9 Anne, c.* 20 (1711), relating to *quo warranto*, is not a part of the law of Delaware.

6. QUO WARRANTO—INFORMATION IN NATURE OF QUO WARRANTO REMEDY.

The remedy by information in the nature of *quo warranto* to try the right to an office or franchise may not be invoked for the redress of private grievances, but can only be invoked when wrong has been done to the public; and where the wrong complained of is the usurpation of an office it must be the usurpation of an office public in character.

7. QUO WARRANTO—OFFICERS OF CORPORATIONS—PROCEEDINGS.

The offices of a corporation, created by special act or under a general corporation law, are offices of a public character, and the remedy by information in the nature of *quo warranto* lies against one usurping such an office.

8. QUO WARRANTO—INFORMATION—PARTIES.

The proceeding by information in the nature of *quo warranto* should be entitled in the name of the state on the relation of the Attorney General.

9. QUO WARRANTO—PROCEEDINGS—NATURE AND FORM.

The proceeding by information in the nature of *quo warranto* retains its common-law prerogative character, and must be instituted by the Attorney General, on behalf of the state, on motion for a rule on the defendant, to show cause why leave should not be granted to file an information against him.

10. QUO WARRANTO—INFORMATION—LEAVE OF COURT—EX PARTE APPLICATION.

The rule to show cause why leave should not be granted to file an information in the nature of a writ of *quo warranto* issues on the *ex parte* application of the Attorney General, on behalf of the state, and is heard on the affidavits and counter affidavits filed by the parties.

11. QUO WARRANTO—INFORMATION—LEAVE OF COURT—EX PARTE APPLICATION—DISMISSAL.

The granting of leave to institute a proceeding by information in the nature of *quo warranto* rests in the sound discretion of the court, and when the rule is made absolute, by granting leave, the information may be filed; but, like other rules, it is subject to a motion to discharge, which, when made, should be accompanied with a corresponding motion to dismiss the information.

12. QUO WARRANTO—INFORMATION—PLEADINGS.

An information in the nature of *quo warranto* accuses defendant of usurping a particular office, and calls on him to show by what authority he holds the office, and the accusation is a statement of fact, and presents an issue; but the only issue tendered is that of usurpation, and to that issue defendant may plead.

13. QUO WARRANTO—INFORMATION—PLEADINGS.

A defendant, called on to plead to an information in the nature of *quo warranto*, must admit or traverse the usurpation of the particular office, as charged in the information, and disclaim or justify the title thereto; and where he admits the usurpation, or disclaims title, the prosecution is entitled to judgment, and where he traverses the usurpation and justifies under his title, he may have his rights determined by trial.

14. QUO WARRANTO—INFORMATION—PLEADINGS.

The plea of justification, in response to an information in the nature of *quo warranto* to oust defendant from an office, must show all the facts necessary to establish the lawful right of defendant; and the plea is an affirmative one, so that the burden of maintaining it is on defendant, and properly concludes with a verification.

15. QUO WARRANTO—INFORMATION—PLEADINGS.

The relator, in an information in the nature of *quo warranto*, may demur to a plea traversing the usurpation and justifying it.

16. PLEADING—PLEA—ABSQUE HOC.

The plea by the *absque hoc* is intended for use only in a case in which the narr. tenders an issue, or in respect to something that calls for a denial.

17. QUO WARRANTO—JUSTIFICATION—PLEADING.

A justification for the act for which usurpation is charged in an information in the nature of *quo warranto* cannot be the inducement of a special traverse, or otherwise accord with the purpose and theory of a special traverse; and relator may reply by new matter in confession and avoidance, which is contrary to the rule of a special traverse, and thereafter the pleadings are as in actions.

18. QUO WARRANTO—PRACTICE AND PROCEDURE.

The practice and procedure belonging to the common-law remedy by information in the nature of *quo warranto*, adopted by the state, are also adopted.

19. QUO WARRANTO—PLEADINGS—INFORMATION—REPLICATION.

An information in the nature of *quo warranto*, which alleges that defendants usurped the offices of directors of a corporation, and which requires them to show by what authority they enjoy the offices, and a replication which sets up new matter in avoidance of the plea of title to the offices, are sufficient in law as to form for the state to maintain its action.

20. CORPORATIONS—BY-LAWS—VALIDITY.

A by-law of a corporation, that restricts or alters the voting power of stock of a corporation as established by the law of its charter, is void.

21. CORPORATIONS—CHARTER PROVISIONS—VALIDITY.

A provision in the charter of a corporation, which gives to its stock a voting power different from that contemplated by the statute under which it is created, is void.

22. CORPORATIONS—RIGHT TO VOTE—STATUTES—VALIDITY.

A statute authorizing a corporation to give to its stock a voting power different from that prescribed by the Constitution is void.

23. CORPORATIONS—RIGHT TO VOTE—WAIVER OF RIGHTS CONFERRED.

A person may waive the provisions of statutes made for his particular and personal protection, and which he may waive without infringing on the rights of others or affecting public policy; but one may not waive a constitutional or statutory provision fixing the voting power of stock in corporations.

Syllabus—Argument.

24. CORPORATIONS—VOTING POWER OF STOCK—CONSTITUTIONAL PROVISIONS.

Const. 1897, art. 9, § 6, providing that, in all elections for directors of stock corporations, each shareholder shall be entitled to one vote for each share of stock he may hold, provides generally that there shall be no discrimination between different classes of stock, but provides generally that the holder of a share of stock is the holder of a vote, so that a holder of preferred stock is entitled to vote it, notwithstanding any statute authorizing corporations to create kinds of stock, with preferences and voting powers.

(*January* 17, 1911.)

Judges BOYCE, CONRAD and WOOLLEY sitting:

*Simpson and Brown,* (of the Philadelphia Bar) and *Saulsbury, Ponder and Morris* for plaintiff in error.

*Christopher L. Ward* and *Herbert H. Ward* for defendant in error.

Supreme Court, January Term, 1911.

WRIT OF ERROR, (No. 1, June Term, 1910) to Superior Court for New Castle County.—No. 108, June Term, 1908 below. Information in the nature of a Writ of *Quo Warranto.* The facts of the case and specifications of the assignments of error fully appear in the opinion.

(See same case, in court below, 1 *Boyce* 129.)

ARGUMENT OF COUNSEL FOR PLAINTIFF IN ERROR.

I.

*The Invalidity of the Service.*

The plaintiff in error was properly in attendance on the United States Circuit Court and privileged from service of summons when the rule to show cause in this case was served upon him.

Witnesses, in common with parties, barristers, solicitors and in short, all persons who have that relation to a suit which calls for their attention, are protected from arrest upon any civil process while going to the place of trial, while attending it for the purpose of the cause and while returning home; *eundo morando et redeundo.*

*Taylor on Ev., Sec.* 1330.

The protection given to suitors and witnesses is extended to every case where the attendance is a duty in conducting any pro-

ceeding of a judicial nature, or where the attendance is necessary in court.

*Bacon's Abr., Privilege, B2.*

The privilege extends to the service of a summons as well as to an arrest.

*Bacon's Abr., Privilege, B2.*

Courts of justice ought everywhere to be open, accessible, free from interruption and to cast a perfect protection around every man who necessarily approached them.

*Halsey v. Stewart, 4 N. J. L., 367.*

As said in *Nichols v. Horten*, 14 *Federal*, 330, "Experience has shown that in order that causes may be fully heard and the orderly administration of justice may be assured, it is necessary that parties, witnesses and jurors shall be protected from service of process in civil action while they are in good faith in attendance upon the trial of causes   *   *   *.   Hence, as 'one of the necessities of the administration of justice' (*Person v. Grant.* 66 *N. Y.* 124), the rule has come to be regarded as the privilege of the court as affecting its dignity and authority and rests, therefore, upon sound public policy."

*Kinne v. Laut,* 68 *Fed.* 436 (440).; *Larned v. Griffen,* 12 *Fed., Rep.* 590; 1 *Foster's Fed. Pr. Sec.* 98, *p.* 196-7; *Brooks v. Farwell,* 4 *Fed.* 166.

In *Matthew v. Tufts,* 87 *N. Y.* 568, defendant, a resident of Boston, came to New York to attend meeting of creditors of Matthews, bankrupt.   Attended solely as a creditor to prove certain debts, and to participate in choice for assignee.   While attending summons in this action was served on defendant.   *Held* he was privileged from service of process.   The court said: "This immunity does not depend upon statutory provisions but is deemed necessary for the due administration of justice.   It is not confined to witnesses but extends to parties as well and it is abundantly sustained by authorities.   *   *   *   That the defendant was in attendance only as a party and as attorney for other parties, we think that he was privileged from service of process or summons while so attending.   All concur."

Argument.

*Clinton v. Winslow*, 20 *Blatch C. C.* 82; *Parker v. Marco*, 20 *L. R. A.* 45; *Humphrey v. Cummings*, 5 *Wend.*, 90; *Holmes et al. v. Morgan Nelson et al.*, 1 *Phila.* 217; *Huddeson v. Prizer*, 9 *Phila.*, 65.

In *Halsey v. Stewart*, 4 *N. J. L.* 366, the court seemed much inclined to think that not only witnesses but all persons who were necessarily coming to or returning from it, either directly or on business of the court or in any manner relative to that business, were entitled to a freedom from arrest and that to arrest them was a contempt of the court.

*Meekins v. Smith*, 1 *H. Bl.*, 636 (1791); *Andrews v. Lembeck*, 46 *Ohio St. Rep.*, *p.* 38.

The President of a corporation is exempt from service when attending courts on the company's business.

*Mulhearn v. Press Pub. Co.*, 53 *N. J. L.* 153; *Citizens Nat'l Bank of Kirgman v. Berry*, 37 *Pac.* 131; *Morse on Banks & Banking, Sec.* 143; *Boone, Banking, Sec.* 144; *Reno Water Co. v. Lette*, 30 *Pac.* 702; *Beebe v. George H. Beebe Co.*, 64 *N. J. L.* 497; *The American Ins. Co. v. Oakley et al.*, 9 *Paige's Chancery*, 496 (501); *Trustees of Smith Charities v. Connoly*, 157 *Mass.* 272 (275-6).

The President of the bank, being its chief executive officer, has a right as such to appear and answer for it, and employ counsel for its defense.

*Savings Bank of Cincinnati v. Benton*, 59 *Ky.* (2M, *etc.*) 240 (244); *Feree & Co. v. Pierce*, 31 *Pittb. Leg. J.* (*N. S.*) 354, 25 *Pa. Co. Ct. R.* 112; *Central Trust Co. v. Milwaukee St. Ry. Co.*, 74 *Fed.* 443; *First National Bank v. Ames*, 39 *Minn.* 129.

The charter of Geo. Brooks and Son Company provides:

"This corporation shall have also the following powers, viz.: To purchase, take, own, hold, deal in, mortgage or otherwise lien and to lease, sell, exchange, transfer or in any manner whatever dispose of real property wherever situated and to have one or more offices out of the State of Delaware and to carry on business and to promote its objects without restriction as to place or amount. To do any or all of the things herein set forth to the same extent as natural persons might or could do in any part of the world."

Its by-laws provide:

The President shall be the chief executive of the company in the management of its affairs and in carrying out the objects for which the company was created.

*First Para. Art. 6, By-Laws.*

Every corporation created under the provisions of this act shall have power:

"To sue and be sued, complain and defend in any court of law or equity."

"To conduct business in this state, other states, the District of Columbia, the territories and colonies of the United States and in foreign countries and have one or more offices out of this state, and to hold, purchase, mortgage and convey real and personal property out of this state provided such powers are included within the objects set forth in its Certificate of Incorporation."

*General Corporation Law, Sec. 2.*

The service of a subpoena or other process is not necessary in order to afford the witness this protection.

*Taylor on Ev.*, § 1330; *Jones v. Knauss*, 31 *N. J.* 211, and note; *Skinner and Mounce Co. v. Waite et al.*, 155 *Fed.* 828.

Right to attend arguments.

*Kinne v. Laut*, 68 *Fed.* 436.

"A suitor who has come from his home in a foreign jurisdiction upon the request of his counsel and for the purpose of consultation with such counsel during the argument of a demurrer, is privileged from the service of process in any court of such jurisdiction during the argument and pending temporary adjournment thereof for the convenience of the court."

*Ex parte McNeill*, 6 *Mass.*, 245; *Torry v. Bast*, 3 *W. N. C.* 63; *Harkness v. Hyde*, 98 *U. S.* 476 (479); *Railroad Company v. Pinkney*, 149 *U. S.* 194.

## II.

All shareholders of Delaware corporations are entitled to vote for directors.

The holders of preferred stock were entitled to vote notwithstanding the charter and by-laws of the company because of the provisions of the Constitution of the state in force at the time the corporation was created.

*Article 9, Sec.* 6, *of Constitution of* 1897:

"In all elections for directors or managers of stock corporations, each shareholder shall be entitled to one vote for each share of stock he may hold."

This provision became a part of every charter thereafter obtained and no provision of any charter granted, and no by-laws, or regulation of the corporation, and no agreement of corporators or stockholders, inconsistent with such constitutional provision, would be valid for any purpose or under any circumstances.

Where the Legislature uses clear and plain words, courts of justice will not suffer them to be set aside either by usage or construction.

*Taylor v. Griswold,* 14 *N. J. L.* 251.

It is only when the language is ambiguous that the courts are called on to construe or interpret.

*Sedgwick on the Cons. of Stat. and Const. Law,* 2d Ed., 195.

Where the law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.

*Fisher v. Blight,* 2 *Cranch,* 358 (399).

When the law is clear and explicit and its provisions are susceptible of one interpretation, its consequences, if evil, can only be avoided by change of the law itself, to be effected by legislative and not judicial action.

*Sedgwick on the Cons. of Stat. Law,* 195; *Bosely v. Mattingly,* 4 *B. Monroe (Ky.)* 89.

Our constitutional provision, *Sec.* 6, *Art. IX.,* being unambiguous, there is no room for construction, but the constitutional debates show the object of the section to be as stated.

The stenographic report of the constitutional debates shows that the committee on corporations made to the convention two

separate reports embodying a suggested article on corporations. These reports were the subject of long debates and elaborate discussion.   In neither of these reports nor in any other way was this *Section* 6 of *Article* 9. brought before the convention during its entire session in any form whatever, until the day when the rest of the article, having been finally put into satisfactory shape, was adopted in the convention.   At this stage the chairman of the committee on corporations, but on his own personal motion in doing so stated to the convention the meaning, construction and and intent of the provision.

The proceedings of the convention with regard to *Section* 6 are in full as follows:

"*Nathan Pratt:* Mr. President, I wish to offer the following as *Section* 6 of *Article IX.* (Corporation) and move its adoption. (Read *Section* 6, *Article IX.*, as afterwards adopted.)

"*Edward D. Hearn:* I second the motion.

"*William Saulsbury:* Mr. President, there is so much confusion in the hall that we cannot hear what is going on.

"*President pro tem. Gilchrist:* The gentlemen will please come to order.

"*Nathan Pratt:* My reason for offering that section is this: I understand that there are cases in this state where a minority of shareholders have control of corporations, and by reason of that they change the by-laws so as to give each individual member of the corporation one vote.   They do not vote as shareholders, but as individuals.   I was not aware that such a thing could be done.   For instance a man might own two thousand shares of stock, and four other men might together own fifteen hundred shares, yet the men with fifteen hundred shares could so change the by-laws that those fifteen hundred shares would have a greater vote than the man with two thousand shares.   If that is the case there ought to be such a provision as I have proposed here. This is intended to provide simply that those holding a majority of the stock shall control the corporation; and that is the reason I offered it."

By a rising vote adopted and convention adjourned.

"When the inquiry is directed to ascertain the mischief designed to be remedied or the purpose sought to be accomplished by a particular provision of the Constitution, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory."

*Cooley, Constitutional Limitations,* 66; *Black's Constitutional Law,* 71.

*Sec.* 6 of *Art.* 9. of the Constitution became a part of every charter thereafter granted, as if it had been inserted therein *ipsissimis verbis.*

*Wil. City Ry. Co. v. Wil. & Brandywine Springs Ry. Co.,* 8 *Del. Ch.* 468 (491-4); *Tomlinson v. Jessup,* 15 *Wall* 456; *Hollyoke v. Lyman,* 15 *Wall* 506; *Miller v. State,* 15 *Wall* 494; *Shields v. Ohio,* 25 *U. S.* 324; *Railroad v. Maine,* 96 *U. S.* 499 (510); *Greenwood v. Freight Co.,* 105 *U. S.* 17; *Railroad Co. v. Georgia,* 98 *U. S.* 361 (365); *Close v. Glenwood, etc., Co.,* 107 *U. S.* 476; *Spring Valley Water Works v. Shottler,* 110 *U. S.* 353; *Hamilton Gas Light Co. v. Hamilton,* 146 *U. S.* 270; *New York, etc., Co. v. Bristol,* 151 *U. S.* 567; *Pennsylvania College Cases,* 13 *Wall,* 213; *Sinking Fund Cases,* 99 *U. S.* 700; *Bixler v. Summerfield,* 191 *Ill.* 147, 62 *N. E.* 849.

If the Certificate of Incorporation cannot contain any provision contrary to the laws of the state, it needs no argument to uphold the contention that the by-laws are likewise restricted.

Our courts have judicially noticed that the Delaware Corporation Act is obviously modeled on the New Jersey Act.

*Wil. City Ry. Co. v. Peoples Ry. Co.,* 47 *Atl.* 245, 251.

A comparison of the Delaware and New Jersey Acts so far as they affect the decision of this case is quite interesting and instructive.

*Section* 13 of the General Corporation Law of Delaware in force in 1901, insofar as it in any way pertains to this case, is as follows:

"Sec. 13. Every corporation shall have power to create two or more kinds of stock of such classes, with such designations, preferences and voting powers, or restriction or qualification

thereof, as shall be stated and expressed in the Certificate of Incorporation."

This is *verbatim Section* 18 of the General Corporation Law of New Jersey.

At the time the charter in this case was granted *Section* 17 of our General Corporation Law read as follows:

"Sec. 17. Unless otherwise provided in the charter certificate or by-laws of the corporation each stockholder, whether resident or non-resident, shall at every election be entitled to one vote in person or by proxy for each share of the capital stock held by him, but no proxy shall be voted on after three years from its date."

This was taken from *Section* 36 of the General Corporation Law of New Jersey, said section being as follows:

"Unless otherwise provided in the charter, certificate or by-laws of the corporation, at every election each stockholder, whether resident or non-resident, shall be entitled to one vote in person or by proxy for each share of the capital stock held by him, but no proxy shall be voted on after three years from its date."

There is no provision, however, in the Constitution of New Jersey similar to *Section* 6, *Article* 9. of our Constitution, and the history or occasion of *Section* 36 of the New Jersey Act can be understood by reference to the famous case of *Taylor v. Griswold*, 14 *N. J. L.* 222.

It has often been held that the charter of a private corporation must be construed as embodying a contract on the part of the state that the corporation shall be allowed to carry out its purposes according to the charter. This may be true of special charters granted by the legislature with the intention of binding the state and the grantees to mutual obligations. But there is no more reason for holding that the formation of a corporation pursuant to such a general law gives rise to a contract with the state than the formation of a limited partnership or joint stock company.

*Morawetz on Private Corporations*, Sec. 1054.

No provision in the articles which is not responsive to some specification in the law can have any such force and effect.

*Thompson on Corporations, Sec.* 216.

All of the decisions hold that any statements or restrictions inserted in the Articles of Association outside of the statements required by the General Assembly allowing the incorporation are unauthorized and void.

*State v. Anderson,* 31 *Ind. App.* 34; 67 *N. E.* 207; *Benn et al. v. U. S. Cement Co.,* 73 *N. E.* 269 (271); *Oregon R. R. & Nav. Co. v. Oregon R. R. Co.,* 130 *U. S.* 1 (25-9); *Wil. City Ry. Co. v. Peoples Ry. Co.,* 47 *Atl. Rep.* 245 (251-2); *Brewster v. Hartley,* 37 *Cal.* 15 (24); *Peoples v. Phillips,* 1 *Denio.* 388 (397); *Audendried v. East Coast Co.,* 59 *Atl.* 577 (584); *Com. v. Conover,* 10 *Phila.* 55; *Taylor v. Griswold,* 14 *N. J. L.* 222; *Com. v. Yetter,* 190 *Pa. St.* 485-6; *People v. Chicago Gas T. Co.,* 130 *Ill.,* 268; *Eastern Plank Road Co. v. Vaughan,* 14 *N. Y.* 546 (551); *Com. v. Yetter,* 190 *Pa. St.* 488 (495-6); *Booz's Appeal,* 109 *Pa. St.* 592; *Albright v. Association,* 92 *Pa. St.* 411.

"A by-law by which a corporation undertakes to deprive a dissenting stockholder of a right secured to him by the articles of the association is void."

*Thompson on Corporations, Sec.* 1015.

It follows that a by-law which deprives a stockholder of a right secured to him by the Constitution of the state is void beyond all question.

The power of voting conferred by the constitutional or statutory law, or by the charter of the corporation, cannot be limited or restrained by the by-laws.

*Archer v. Murphy,* 26 *Wash. L. Rep.* 98.

The amendment of the Constitution subsequent to the incorporation striking out the quoted provision (*Sec.* 6, *Art. IX.*) would not make valid a charter provision or a by-law, inconsistent with the Constitution in force at the time of the incorporation of the company.

*Vol.* 22 *Del. Laws,* 3 and 543.

"Whenever a law is in its own nature a contract and absolute rights have been vested under it, a repeal of that law cannot divest these rights or annihilate or impair the title so acquired."

*Story on Constitution,* 258.

Cited in *Bailey v. P., W. & B. R. R. Co.*, 4 *Harr.* 389.

See also *P., W. & B. R. R. Co. v. Bowers*, 4 *Houst.* 506; *Del. R. R. Co. Tax Case*, 18 *Wall.* 225.

### DISCRETION OF THE COURT.

"The granting of leave to file an information in the nature of a writ of *quo warranto* rests in the sound discretion of the court, and without strong grounds for questioning the defendant's title to the office, the court will refuse to grant it."

2 *Woolley on Delaware Practice, Sec.* 1668.

This discretion continues and exists in the appellate tribunal and should be exercised by the Supreme Court in this case against granting the writ.

### III.

### THE DEFECTIVE REPLICATION.

The replication of the defendant in error, filed in the court below, is defective in that:

1. It traverses the inducement of the plea filed by the said George H. Brooks.

2. The replication answers the inducement in said plea by pleading in confession and avoidance.

3. Said replication sets forth new matter in answer to the plea of the said defendant.

4. That the said replication concludes with a verification and does not conclude to the country.

5. That said replication does not join issue upon the plea filed by the said George H. Brooks.

6. The said replication is argumentative.

Practically all the authorities agree that the pleadings in an action of *quo warranto* are governed in general by the rules applicable to pleadings in ordinary civil actions. The plea filed by George H. Brooks, the plaintiff in error, in the court below, was in form of an *absque hoc*, following the precedent in *quo warranto* proceedings established by the case of *State v. Churchman*, 3 *Penn.*, 167, where the defendant's plea is drawn out and published in

full, and the case of *State v. Hancock*, 2 *Penn.* 252 (263-5), where the plea is also reported in full. These cases show that a plea in the form of an *absque hoc* is a proper plea in *quo warranto* proceedings; it follows that the plaintiff below should have joined issue on this plea, and a replication containing new matter, concluding with a verification or traversing the inducement of this plea and failing to join issue thereon is contrary to the law respecting special traverses. *Stephen on Pleading*, *pp.* 186-190, at *page* 189, says: "As the inducement of a special traverse when the denial under the *absque hoc* is sufficient, can neither be traversed nor confessed and avoided, it follows that there is in that case no manner of pleading to the inducement. The only way, therefore, of answering a good special traverse is to join issue upon it." Stephen's view concerning replication to a plea in the form of an *absque hoc* is sustained by our courts in the case of *Thomas v. Black*, 8 *Houst.* 507, at 512.

## IV.

*Quo Warranto* does not lie in this state for usurping office in a private corporation.

The right, the protection of which is sought in this case, is a private right and therefore, cannot be enforced in this state by *quo warranto* in the name of the state at the relation of the Attorney General.

This whole subject was learnedly considered by the Superior Court in *State ex rel. Dunlap v. Stewart*, 6 *Houst.* 359, but that case involved a religious society. A religious society is not a private corporation.

*Goddard v. Smithett*, 3 *Gray Mass.* (116) (120).

There is in this state, no statute and no decision of any court that *quo warranto* will lie to try title to an office in a corporation strictly commercial and private.

"Prior to the statute of Anne, the information in the nature of a *quo warranto* was employed exclusively as a prerogative remedy, to punish usurpation upon the franchises or liberties granted by the Crown, and it was never used as a remedy for private citi-

zens, desiring to test the title of persons claiming to exercise à public franchise.

High on Ex. Rem., §§ 602, 681.

The statute of Anne has never been adopted, and is not in force in Delaware.

Woolley's Pr., p. 1131.

Field, C. J., in Haupt v. Rogers, 170 Mass. 71 (74), said:

"At common law in England, an information in the nature of a quo warranto to try the title to an office was confined to public offices, and this is the rule in this commonwealth."

As the only authority for the Superior Court to entertain information in the nature of quo warranto is given by Sec. 1, Chap. 92, of the Code, and as the only power there given is, "as fully and amply, to all intents and purposes, as the justices of the King's Bench, Common Pleas and Exchequer of England, or any of them, may or can do," it follows that in the absence of any such power or authority in the English courts to entertain such an information for a corporate office, except of a public nature, that our courts are likewise bound by the same limitation and restriction.

## V.

The proceeding is improperly entitled in the name of the state on the relation of the Attorney General, because the record shows that no public interest or right is involved, and the proceeding is brought to try the claims of private persons to positions in an exclusively private corporation and such a proceeding, if it can be brought and maintained at all, can be so only upon the relation of the party or parties in interest.

State ex rel. Dunlap v. Stewart, 6 Houst. 359, is the only other case of quo warranto ever brought in Delaware to try title to an office not clearly a public elective office.

In that case several private persons were the relators, and the information was filed by the Attorney General in the name of the state at the relation of those certain private persons.

## VI.

This proceeding is necessarily futile and nugatory.

The action or proceeding is instituted to induct into office two persons in lieu and place of the two defendants named in said action or proceeding, upon only one of which persons named as respondents, service has been had, and the other respondent is not before the court. Any order, therefore, which the court could make in this action or proceeding would be ineffective and futile, as the two claimants could not be inducted into one office vacated on the order of the respondent before the court.

If neither could get the seat because a court could not decide between them, then the court will surely not try moot questions. *Commonwealth v. Dearborn et al.,* 15 *Mass.* 125.

*Art.* 10 of the By-laws of George Brooks and Son Company provides: "In case of a vacancy occurring in the Board of Directors from any cause, the same may be filled by appointment made by the Directors in office."

### ARGUMENT OF COUNSEL FOR DEFENDANT IN ERROR.

### I.

Plaintiff in error claims that he was privileged from service of summons in this case because he was at the time of service in the corridor of the Federal Building in Wilmington, in which building he had been listening to argument on a motion for a preliminary injunction in a suit against Geo. Brooks and Son Company.

He was not the defendant in that suit. He was not a witness. He was not there under process nor in answer to a subpoena nor writ of any sort. He was there voluntarily. No testimony was being taken nor could any be taken. It was an argument on affidavits and the only affidavit made by Geo. H. Brooks had been made, at least, three days before.

Witnesses are exempt from arrest while going to the place of trial, while attending there and while returning home. So are parties to the action or suit and attorneys engaged in it. But

this privilege or exemption is against common right and should be strictly construed and rigidly limited.

In *Hale v. Wharton*, 73 *Fed.* 739 (on brief of plaintiff in error) it was a party to a suit who was held privileged and the language of the opinion goes no further than "parties, witnesses and jurors". In *Halsey v. Stewart*, 4 *N. J. L.* 366, *Kinne v. Lant*, 68 *Fed.* 436, *Larned v. Griffin*, 12 *Fed.* 590, and *Brook v. Farwell*, 4 *Fed.* 166, the privileged person was either a party to the suit or a witness. *Foster's Federal Practice, Sec.* 98, cited by plaintiff in error, limits the exemption to "witness, party, attorney or counsel." In *Matthews v. Tufts*, 87 *N. Y.* 568, it was a party and an attorney for other parties. In *Clinton v. Winslow*, 20 *Blatch, C. C.* 82, it was a witness and a party. In *Humphrey v. Cummings*, 5 *Wend.* 90, it was an attorney. In *Holmes v. Nelson*, 1 *Phila.* 217, it was an attorney. In *Huddeson v. Prizer*, 9 *Phila.* 65, it was a party and a witness. In *Halsey v. Stewart*, 4 *N. J. L.* 366, it was a party. In *Meekins v. Smith*, 1 *H. Bl.* 636, the language of the court is that, "All persons who had relation to a suit which called for their attendance." This language covers witnesses, suitors and their attorneys, but it is submitted, even this general statement goes no further. In *Andrews v. Lambeck*, 46 *Ohio, St. Rep.* 38, it was a party.

Most of the cases cited in plaintiff in error's brief do not go beyond the class of parties, witnesses and attorneys.

Some of the cases go only to the point that the president of a corporation is the proper manager of the company's litigation.

In *Mulhearn v. Press Pub. Co.*, 53 *N. J. L.* 153, the privileged person was a witness. In *Feree v. Pierce*, 31 *Pitts. Leg. J.*, 354, it was a witness. In *Central Trust Co. v. Milwaukee*, 74 *Fed.* 443, it was an attorney in the suit. In *First Nat'l Bank v. Ames*, 39 *Minn.*, 129, it was a witness. In *Jones v. Krauss*, 31 *N. J. Eq.*, 211, it was a witness. In *Skinner v. Mounce*, 155 *Fed.* 828, it was a witness. In *Kinne v. Lant*, 68 *Fed.* 436, as noted above, it was a party. In *Torry v. Bast*, 3 *W. N. C.* 63, it was a party. In *Hale v. Wharton*, 73 *Fed.* 739, it was a party.

The plaintiff in error has not cited a single case in which the rule went beyond a party, a witness or an attorney in a cause.

He attempts to extend the rule to include the president of a corporation, which is a party, but he has not cited a single decided case to uphold this extension.

We do not admit that Geo. H. Brooks was president of Geo. Brooks and Son Company, which was defendant in the suit in the Federal Court. Whether he was such president is the very question this *quo warranto* proceeding was brought to try.

## II.

The plaintiff in error claims that in spite of the provisions of the charter and by-laws, the preferred stockholders of this corporation had a right to vote because of *Section* 6 of *Article* 9 of the *Constitution* of 1897, which is as follows:

"In all elections for directors or managers of stock corporations each shareholder shall be entitled to one vote for each share of stock he may hold."

This section does not mean that the legislature could not provide for certain classes of stock having restricted voting powers or no voting powers at all. It means only that voting in corporations shall be according to the number of shares held by stockholders having the right to vote and not one vote for each stockholder, irrespective of his shareholdings, as was the rule at common law.

Our contention is that the purpose, intent and meaning of the section in question was merely to abrogate the common law rule which was that stockholders in corporations were entitled to one vote each on all questions irrespective of the number of shares held by them.

The claim of having one vote for each share, neither rests on the common law of the land nor any of its principles.

*Taylor v. Griswold*, 14 *N. J. L.*, 222, at 327; 2 *Cook on Corporation*, 1137; 2 *Harvard Law Review*, 156.

The above citations sufficiently show that at common law the rule of "one man, one vote" held in private corporations irrespective of the financial interests of the respective stockholders, as well as in municipal corporations.

It was to abrogate this common-law rule and to establish the rule of voting by shares of stock that this section of the Constitution was framed. That this is the true meaning and intent of the section in question is conclusively shown by the report of the debates of the convention and the meaning given to the section in these debates. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory.

*Cooley, Constitutional Limitations,* 66.

The proceedings of the convention with regard to *Section* 6 are in full as shown in argument of counsel for plaintiff in error. It is therefore perfectly clear that the intention of the Constitutional Convention, imperfectly expressed it may be in the closing hours of one of the last days of the convention was to adopt a section which should provide that whatever voting was done in private corporations, should be done according to the holding of stock of the person qualified to vote, and not on the principle of "one man, one vote" as in municipal corporations.

This section as adopted may be to some degree ambiguous and in fact it has been amended out of the Constitution because of this ambiguity and a fear lest it might be construed to have the very meaning which the defense in this case seeks to establish.

But even if this court should hold that *Section* 6, *Article* 9, has the meaning sought to be put upon it by plaintiffs in error, it is submitted that

The section in question confers a right upon preferred stockholders which such stockholders might waive and which in this case was effectually waived at the time the corporation was organized by provisions in the charter and by-laws apt for the purpose.

Courts have generally laid down that the corporation charter created under the law of a state is a contract with triple aspects.

(a) It is a contract between the corporators and the state.

(b) It is a contract between the corporation and its stockholders.

(c) It is a contract between corporators or stockholders themselves.

The sole office and operation of this constitutional provision

is to define a term which, without express specification in a char-
ter secured under the laws of the State of Delaware, would be and
become a term of the contract embodied in such charter. Even
if no provision relative to the voting power of capital stock
appeared in the charter of a company so organized, any stock-
holder would be able to rest his right to vote for each share he
held upon this provision.

A person may waive any provision either of a contract or of
a statute intended for his benefit.

*Shulte v. Thompson,* 15 *Wall* (*U. S.*) 151, 159; *Bowen v.
Aubrey,* 22 *Cal.* 566, 572; *Morrison v. Underwood,* 5 *Cush.* 52;
*Beecher v. Marquetta, &c. Rolling Mill Co.,* 45 *Mich* 105, 109;
*Phyfe v. Eimer,* 45 *N. Y.* 112; *Kimball v. Munger,* 2 *Hill* 364;
*Tombs v. Rochester, &c. Co.,* 18 *Barb.* 583.

With reference to constitutional rights the principle is stated
in *Cooley's Constitutional Limitations, star page* 181; *Endlich on
Interpretation of Statutes,* § 537.

Upon taking out the charter of Geo. Brooks and Son Com-
pany the corporators waived in certain particulars and modified
the above mentioned right of one vote for each share of stock,
and provided as follows:

"The amount of total authorized capital stock of this cor-
poration is three hundred thousand dollars ($300,000) divided
into two thousand shares of common or general stock of the par
value of one hundred dollars ($100) each, and one thousand
shares of preferred stock of the par value of one hundred dollars
($100) each."

· Then follows a statement of the rights of the common and
preferred stock as to dividends,—liquidation and redemption, and
then the following words:

"The holders of said preferred stock, shall not be entitled by
reason of their holdings thereof, to any voice or vote in the man-
agement or affairs of the corporation. The voting power shall be
confined to the holders of the common or general stock."

The organization of the company occurred immediately after
the granting of the charter, and the by-laws of said company,
upon such organization, contain the following provision:

"Article 3. The capital of this company shall be three hundred thousand dollars, divided into two kinds of stock, one hundred thousand of preferred stock, and two hundred thousand of common stock.

"The one hundred thousand of preferred stock shall have no vote in the transaction of any business of the company, being a first lien on all the property, and in case of liquidation shall be redeemed at par; shall draw a regular yearly dividend of six per cent., which may be paid quarterly, and which shall be cumulative.

"The two hundred thousand common stock shall have, and possess all voting power; shall meet and elect Board of Directors once a year, alter and amend By-laws, and in fact exercise all the power of stockholders, as hereinafter provided."

*Article* 14, under the head of "stockholders meetings" contains the following provisions:

"Stockholders representing either in person, or by proxy, a majority of the common stock shall constitute a quorum.

"Election shall be by ballot and each common stockholder shall be entitled to cast one vote for each share standing in his name, as shall appear by the stock list at the time of closing the transfer books.

"The person receiving the greatest number of votes cast. shall be elected.

"No person shall vote as proxy unless he shall produce and deliver to the Secretary, a written or printed authority signed by the common stockholders, whom he represents, seven days previous to said annual meeting."

*Article* 15 of the By-laws is as follows:

"The By-laws may be altered, amended, or repealed, by the common stockholders at any regular or special meeting, but in any, and every such alteration, amendment, or repeal, at least two-thirds of all the common stock must concur."

Assuming the principle that the rights secured by the constitutional provision in question might be waived by all persons in interest it is respectfully submitted that the above quoted provisions of the charter and by-laws clearly do waive such right

and modify the same by restricting the voting power of the stock of the corporation to the holders of the common stock.

It may also be noted in this connection that the General Corporation Law of the state had in it at the time of the incorporation of this company, and ever since, the following provisions:

"The Certificate of Incorporation may also contain any provision which the incorporators may choose to insert for the regulation of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any classes of stockholders; provided, such provisions are not contrary to the laws of this state."

*Section 5, Sub-section 8.*

"Section 13. Every corporation shall have power to create two or more kinds of stock of such classes, with such designations, preferences, and voting powers, or restrictions or qualifications thereof, as shall be stated and expressed in the Certificate of Incorporation."

At the time the charter was granted *Section 17* of the *General Corporation Law* read as follows:

"Section 17. Unless otherwise provided in the Charter, Certificate or By-laws of the corporation each stockholder, whether resident or non-resident, shall at every *election* be entitled to one vote in person or by proxy for each share of the capital stock held by him, but no proxy shall be voted on after three years from its date."

Subsequently this section was modified so as to read as follows:

"Section 17. Unless otherwise provided in the Charter, Certificate or By-laws of the corporation each stockholder, whether resident or non-resident, shall at *every meeting of the stockholders* be entitled to one vote in person or by proxy for each share of the capital stock held by him, but no proxy shall be voted on after three years from its date."

The difference between the quoted portions of Section 17 lies in the words above italicized in each quotation. The words "meet-

ing of the stockholders", being substituted for the word "election".

It is apparent therefore that under the provisions of the General Corporation Law, under which the charter in question was issued, the corporators had the express right given them to issue two classes of stock to deprive the preferred stockholders of any vote and to confer the exclusive right to vote upon the holders of the common shares.

This last point of course rests upon the assumption that the General Corporation Law in the parts above quoted was constitutional in 1901, when the charter in question was issued.

But touching this question it may be noted that by *Chapter 1, pp.* 3 and 4, *Volume* 22, *Laws of Delaware*, approved March 9, A. D. 1901, and by *Chapter* 254, *p.* 543, *Volume* 22, *Laws of Delaware*, approved March 17, A. D. 1903, said *Section* 6 of *Article* 9 of the original Constitution was excised therefrom, and that thereby this constitutional provision was stricken out and does not appear in the Constitution as it has been, and now is, since March 17, 1903.

As more fully above argued, said *Section* 6 of *Article* 9 of the Constitution gave a right or title to the holder of each share of stock to one vote for each share at the election for directors or managers of said corporation; that the corporators and the state might waive such right or title by accepting the charter which by its terms limited such voting power, even without express statutory authority so to do; and that the charter so issued and accepted would be binding upon all classes of persons who took title to stock thereunder.

Unless the statutory provision is clearly repugnant, inconsistent and conflicting with the constitutional provisions that the statutory provisions may not, upon any reasonable construction, stand in the face of such constitutional provision, courts will not hold such statutory provisions to be unconstitutional. The authorities in our own state are full upon this point and none of them need to be referred to except the case of *Bailey v. R. R. Co.*, 4 *Harr.* 389, 403, etc.

In *Tomlinson v. Jessup*, 15 *Wall* 454, cited on plaintiff in

error's brief, page 27, the constitutional provision was a restriction or limitation imposed on the corporation, the reserved right of the legislature to amend, alter or repeal the charter. Of course, one cannot waive a restriction.

The same is true of *Holyoke v. Lynam*, 15 *Wall* 500; *Miller v. State*, 15 *Wall* 478; *Shields v. Ohio*, 25 *U. S.* 324; *Railroad v. Maine*, 96 *U. S.* 361; *Greenwood v. Freight Co.*, 105 *U. S.* 13; *Railroad Co. v. Georgia*, 98 *U. S.* 359; *Close v. Glenwood*, 98 *U. S.* 466; *Spring Valley v. Shottler*, 110 *U. S.* 347; *Hamilton Gas Light Co. v. Hamilton*, 146 *U. S.* 258; *N. Y. &c., R. R. Co. v. Bristol*, 151 *U. S.* 556; *Pa. College Cases*, 13 *Wall* 190; *Sinking Fund Cases*, 99 *U. S.* 700,—all cited in brief of plaintiff in error.

In *Bixler v. Summerfield*, 195 *Ill.* 147, a prohibition against corporations holding land exempt such as is required for corporate purposes is considered.

Every other case cited with *Bixler v. Summerfield* noted above decides the same point, namely, that the legislature may reserve a right to alter, amend or repeal a charter and goes no further than that the reservation of such a right in a general corporation law is as effective as though it were contained in the charter itself. Not one goes to the point of waiving privileges granted by the law or constitution to the incorporators or stockholders. The plaintiff in error says this power to insert other provisions is limited by the conclusion of the section, "Provided such provisions are not contrary to the laws of the state." This provision may not be inserted he says, because it is contrary to the laws of the state. But that is the very question we are arguing. Is it contrary to the laws of the state? Is it not merely a waiver of a privilege of right that could be waived?

While it is true, as stated in the brief of plaintiff in error, that pleadings in an action of *quo warranto* are governed in general by the rules applicable to pleadings in ordinary civil causes, the peculiar nature of the proceeding results in a peculiar method of pleading. This method is perhaps most clearly set out in 17 *Am. & Eng. Ency. Pl. & Pr.* 457, 458, 467-9, 472, 474, 476, amply supported and confirmed by the cases cited.

Argument.

The peculiarity of the pleading in *quo warranto* is clearly stated in *High on Extraordinary Legal Remedies* (3 *Ed.*) § 712 and 726; *Shortt on Extraord. Rems.* 177, 178.

It appears that the defendant in *quo warranto* occupies the position of the plaintiff in an ordinary action at law. He is called upon to state his case and make his claim to his office affirmatively in his plea. The burden rests on him to allege and prove his title. It is clear, then; that the plea in *quo warranto* fulfills the function of the declaration in an ordinary action. And it is manifestly improper to conclude such a plea—which is really a declaration—with special traverse,—an *absque hoc.*

The authorities cited by plaintiff in error to support the *absque hoc* are *Del. State v. Churchman*, 3 *Penn.* 167 and *State v. Hancock*, 2 *Penn.* 252. In both of these cases the defendant having pleaded in this manner the Attorney General demurred. The question of the propriety of the form of the pleading was not raised nor decided by the court.

In this case the defendant in error has followed the method and plan of pleading as outlined above. When the plaintiff in error filed his amended plea an examination of it showed that it complied substantially with the requirements of a proper plea in *quo warranto*—setting up defendant's case as far as the *absque hoc* paragraph. Up to that point it was good in form. The improper addition of the *absque hoc* paragraph was immaterial and the defendant in error preferred rather than further protract the case to ignore the error in form and reply to the plea as though it were properly and formally drawn.

There is one precedent in this state (*State v. Stewart*, 6 *Houst.* 359) holding that the rights of trustees in a church corporation may be tried by *quo warranto*. It is a decision of the Superior Court and so not binding on this tribunal, but it was decided by a court of great learning and judicial weight after able and exhaustive argument by lawyers of the most eminent standing and the opinion of the judges is of so clear and cogent reasoning that it will and should have great weight—especially so when it is considered that it has stood as law in the state for nearly thirty years.

Argument.

In that case it was held that the words "public office" used in the English and American decisions did not necessarily mean municipal or state office—politically public office—but office created by public act of legislature.

There is no distinction in this respect between a corporation for religious purposes and a corporation for commercial purposes.

*Quo warranto* is usually held to be an appropriate remedy to try an office, in a private corporation, either at common law or under special statutory provisions.

23 *A. & E. Ency. Law* (2 Ed.) 640.

In *Commonwealth v. Arrison*, 15 *S. & R.* 127, it was held that at common law the court might grant leave to file an information in the nature of a *quo warranto* to try title of trustees of a private corporation. The corporation in question was a church but the decision was not on that ground but on the broad ground indicated in the language of Tilghman, C. J.

In *State v. Hunton*, 28 *Vermont* (1856), the right of directors in the Bank of White River was tried by this proceeding at common law, there being no statute governing the matter.

In *Owen v. Whittaker*, 20 *N. J. Eq.* 122, the court says: "For many years, the courts of law have exercised jurisdiction as to officers of corporations by writ of *quo warranto* or information in the nature of *quo warranto* and by mandamus" * * *.

In *People v. Tibbets*, 4 *Cow.* (*N. Y.* 1825), 357, an information of this nature was held to be a proper proceeding to try the title of director of an insurance company "or any other corporation."

In *Hullman v. Honcomp*, 5 *Ohio State* (1855) 237, the court held that the legality of election of trustees of a cemetery association could not be tried by bill in equity but that "such cause falls appropriately within the jurisdiction of proceedings at law by *quo warranto.*"

*State v. Tudor*, 5 *Day* (*Conn.*) 329 (1812), is a case of information in nature of *quo warranto* for usurping office of director of a bridge company, a private corporation.

*Lawson v. Kolbenson*, 61 *Ill.* 405, holds that "it is the settled law of this country that an information in the nature of a *quo warranto* will lie against one who intrudes himself into the office of trustee of a church corporation."

*Nelson v. Benson,* 69 *Ill.* 27, is to the same effect.

In *Place v. People,* 192 *Ill.* 160, the private corporation was the Crowned King Mining Company and the proceeding was an information of this character.

In *Smith v. Bank of the State of Indiana,* 18 *Ind.* 327, it was held that *quo warranto* was the remedy to try title of directors to office.

In *Beckett v. Houston,* 32 *Ind.* 393, the corporation was a turnpike company, and the proceeding was an information in the nature of a *quo warranto.*

Many other cases are cited in 23 *A. & E. Ency. of Law* (2 *Ed.*) 640, in support of the right to try title to offices of private corporations by this proceeding, and only four cases are cited on the other side, among which are those in the brief of plaintiff in error.

### V.

The information was properly signed by the Attorney General. This is the practice whether the application partake of a public or private character.

*Woolley's Practice,* § 1668; 17 *A. & E. Ency. Pl. & Pr.,* 429-430; *Atty. Genl. v. Sullivan,* 163 *Mass.* 446; *Haupt v. Rogers,* 170 *Mass.* 71; *Rice v. Nat'l Bank,* 126 *Mass.* 300; *Osgood v. Jones,* 60 *N. H.* 548; *State v. Taylor,* 50 *Ohio St.* 120; *Goddard v. Sunthett,* 3 *Gray* (*Mass.*) 116.

In *State ex rel Dunlap v. Stewart,* 6 *Houst.* 359, cited in plaintiff in error's brief in support of his fifth point, the language of Comegys, C. J., refers explicitly to the practice in England not at common law but after the enactment of the statute of Anne, which statute has never been adopted and is not in force in Delaware.

### VI.

This action or proceeding is not instituted to induct into office any person or persons. The writ of *quo warranto* is not used nor intended to induct any one into office but is instituted to try the right of directors to the office which they claim to hold.

17 *A. & E. Ency. Pl. & Pr.,* 386.

The court below was not asked to induct any one into office nor did it attempt to do so. It was asked to oust George H.

Brooks from office and did only that, as is shown by the language of the judgment.

WOOLLEY, J., delivering the opinion of the court:

On or about the twenty-eighth day of October, A. D. 1901, Henry Brooks, Richard B. Morrell and William M. Pyle organized a corporation under the general corporation laws of the State of Delaware, for the purpose of conducting and carrying on the textile business in which Brooks and Morrell had been previously engaged in the State of Pennsylvania. Before entering upon its business, the corporation, which was known as Geo. Brooks and Son Company, issued $300,000 of its capital stock, of the share value of $100 each, $100,000 of which was preferred stock, the holders of which, by the provision of its charter, were excluded from any voice or vote in the management of its affairs, and $200,000 of which was common stock, the holders of which, by like provision, were vested with the sole right to vote in matters pertaining to the corporation. To Henry Brooks were issued 1,000 shares (or all) of the preferred stock and 1,000 shares (or one-half) of the common stock, and to Richard B. Morrell were issued 1,000 shares (or the balance) of the common stock. From the holding of Morrell, three shares were transferred to William M. Pyle in order to qualify him as a director, resident in Delaware.

The three named incorporators were duly elected directors and together acted as such until February 5, 1908, when a vacancy in the board of directors occurred by the death of Henry Brooks, which was filled by the election of Marshall A. Brooks at a meeting held by Morrell and Pyle, the two surviving directors.

Dissatisfaction and disagreements arose and culminated at a stockholders' meeting held on May 11, 1908, which was a deferred annual meeting of the stockholders of the company for the election of directors. At that meeting those who had succeeded to the stock of Henry Brooks, who proved to be members of the Brooks family and one John B. Wurtz, a stranger to both the Brooks and Morrell interests, voted 1,000 shares of preferred and 1,000 shares of common stock for George H. Brooks, the plaintiff in error, John W. H. Brooks and Marshall A. Brooks, while the

1,000 shares of common stock represented by the Morrell interests were voted for Richard B. Morrell and William M. Pyle.

George H. Brooks, John W. H. Brooks and Marshall A. Brooks were declared elected directors, which offices they immediately assumed by organizing a board of directors, electing George H. Brooks president of the company, and taking possession of its property and assuming control of its business.

In contest of the right of those claiming election as directors by the vote of the preferred stock of the company, Morrell filed a bill of complaint against the company in the United States Circuit Court for the District of Delaware, at Wilmington. At a hearing in that court on a motion for a preliminary injunction prayed for in the bill, George H. Brooks, the president of the defendant company, was present with the company's solicitor, rendering him such aid as his official position afforded. During a recess and while in the Federal Building, George H. Brooks was served with the rule, allowed by the Superior Court in this case, requiring him to show cause why leave to file an information in the nature of a writ of *quo warranto* should not be granted against him

Upon the return of the rule and under leave to appear specially, the respondent moved to vacate the service of the rule on the ground of privilege and exemption from service while in attendance on the United States Circuit Court under the circumstances indicated. The motion was denied and exception noted.

Upon the failure of the respondent in the rule to show cause, the court made the rule absolute and granted leave to the Attorney General to file against the respondent an information in the nature of a writ of *quo warranto*. The information is in the following form:

"New Castle County—ss.:

"Robert H. Richards, Attorney General of the State of Delaware, who sues for the said State of Delaware, in this behalf, comes here before the judges of the Superior Court of the State of Delaware in and for New Castle County, on this thirteenth day of June, A. D. 1908, at the June term of said court, and for the

Opinion.

said State of Delaware, gives the said court to understand and be informed that under the provisions of the general corporation law of the State of Delaware, on or about the twenty-eighth day of October, A. D. 1901, Geo. Brooks and Son Company was created a corporation of the State of Delaware and forthwith thereafter duly organized and engaged in the business for which it was chartered, with all franchises, privileges and rights of a corporation, and that for upwards of one year prior to, on and after the eleventh day of May, A. D. 1908, Richard B. Morrell, Marshall A. Brooks and William M. Pyle were and are the lawfully elected and duly chosen and qualified directors of said corporation, holding office as such until their successors shall be duly elected and qualified, and that notwithstanding the premises, George H. Brooks and John W. H. Brooks have, during all the time since the eleventh day of May, A. D. 1908, used and still do use the franchises, offices, privileges and liberties of directors of the said Geo. Brooks and Son Company, and during the said time hitherto the said franchises, offices, privileges and liberties of directors of the said company have usurped and still do usurp to the great damage and prejudice of the State of Delaware.

"Whereupon the said Attorney General prays that the court do grant a writ of *quo warranto* directed to the said George H. Brooks and John W. H. Brooks commanding them and each of them that they appear in the said court on some day to be named by the said court, to show by what warrant or authority they claim to have and enjoy the franchises, offices, privileges and liberties aforesaid.

ROBERT H. RICHARDS,
*Attorney General of the State of Delaware.*"

After refusal by the court to allow subsequent motions to quash the information and discharge the rule for reasons that appear in subsequent pleadings, the defendant below filed his plea to the information. By his plea he admits the incorporation of the Geo. Brooks and Son Company, and that prior to the stockholders' meeting of May 11, 1908, Marshall A. Brooks, Morrell and Pyle were its lawfully elected and qualified directors to remain

such until their successors were lawfully elected and qualified. For title to his office as director, he shows that at the election for directors on the date last named, all of the stockholders of the company were present either in person or by proxy, that the stock vote was equal to the stock issued, that he received 2,000 of the 3,000 votes cast, that 1,000 votes represented the votes cast upon the 1,000 shares of preferred stock and that the other 1,000 votes were cast upon 1,000 shares of the common stock, and that the votes so cast for him upon the shares of preferred stock were legally cast and counted under and by force of the provision of the Constitution of the State of Delaware of 1907, as then existing (*Article* 9, § 6), which was that "In all elections for directors or managers of stock corporations each stockholder shall be entitled to one vote for each share of stock he may hold."

The plea concludes with a denial of the usurpation of the office charged in the information, by employing the formal language of a special traverse, "Without this, that the said George H. Brooks during all the time since the eleventh day of May, A. D. 1908, the said franchises, offices, privileges and liberties of director of the said corporation has usurped and still does usurp in the manner and form as in the said information is alleged, and this the said George H. Brooks is ready to verify."

To that part of the defendant's plea in which he shows the title by which he claims and holds the office he is charged to have usurped, the Attorney General replied by special replication, setting up new matter in avoidance of that upon which the defendant based his title. By this new matter he challenges the right of holders of the preferred stock to vote for directors, and quotes from the charter and by-laws of the corporation the provisions respecting the voting power of stock. The provision of this charter is, that "The holders of said preferred stock shall not be entitled, by reason of their holdings thereof, to any voice or vote in the management of the affairs of the corporation. The voting power shall be confined to the holders of the common or general stock;" and it is further shown that the by-laws provide that

"The one hundred thousand of preferred stock shall have no vote in the transaction of any business of the company, being a

first lien on all of the property, and in case of liquidation shall be redeemed at par, shall draw a regular yearly dividend of 6%, which may be paid quarterly, and which shall be cumulative.

"The two hundred thousand common stock shall have and possess all voting power, shall meet and elect board of directors, once a year, order and amend by-laws, and, in fact, exercise all the power of stockholders, as hereinafter provided."

It is therefore replied that the 1,000 votes received by the defendant below and cast for him by the holders of that quantity of preferred stock, were illegal, that without the votes on the preferred stock, each person voted for at the election mentioned received the same number of votes, that the vote was therefore a tie and as a consequence no one was elected, and that the defendant and his brother have usurped the offices to which Morrell and Pyle are entitled as holding-over directors. To this replication the defendant below demurred specially, showing for causes of demurrer matters that appear in his assignment of errors. The demurrer was overruled, and upon election, final judgment was entered.

This cause comes before this court on a writ of error, in support of which the plaintiff in error suggests error in the judgment and proceedings below by an assignment of errors containing ten specifications, which have been grouped and classified so that the questions presented by them may be considered under the following titles:

1. Exemption of the defendant below from service of process.

2. Whether the remedy employed extends to the usurpation of an office in a private corporation.

3. Whether the proceeding is properly entitled in the name of the State of Delaware upon the relation of the Attorney General.

4. Whether a replication may contain new matter in reply to a plea concluding with the *absque hoc.*

5. Whether the proceeding is futile and nugatory.

6. Construction of constitutional and statutory provisions relating to the voting power of stock.

1.   The first error suggested to have been made by the court below was its refusal to vacate the sheriff's return of service of the rule upon the plaintiff in error and its denial to him of the privilege and exemption from service of process claimed by him under the circumstances of his presence in this jurisdiction. It appears that Geo. Brooks and Son Company had been made defendant in an action instituted by Morrell in the United States Circuit Court for the District of Delaware, at Wilmington, and that at an argument upon a motion for a preliminary injunction prayed for in the bill, heard solely on affidavits previously filed, George H. Brooks was present in the capacity of the president of the defendant corporation. During a recess of the court and before the conclusion of the argument, the rule upon which this action is founded was served upon him.

Being a non-resident, the appearance of George H. Brooks within this jurisdiction was voluntary; the action being against his corporation and not against him, he was not present as a party; and the argument being on affidavits, his presence as a witness was neither compelled nor required. It is urged, however, that his presence as the president of the defendant corporation was necessary either to the court or to his corporation, and therefore is privileged, and the service of process upon him while in attendance upon the litigation of his corporation, was consequently invalid.

The privilege of parties to judicial proceedings, as well as witnesses, attorneys, judges, jurors and certain other officers of the court, of going to the place where they are held, and remaining as long as necessary and returning wholly free from the restraint of process in other civil proceedings, has been long settled and liberally enforced. The rule is of ancient origin and is mentioned in the Year Books as early as Henry VI. It came to us out of the common law with only such modifications as were required to make its principle harmonize with American institutions and to be in accord with American jurisprudence.

The rule is based upon reason and was established for a purpose which has been consistently adhered to from the early English authorities down through the modern American authorities upon the subject. The reason of the rule is the proper adminis-

tration of justice and its purpose is to protect that administration from embarrassments and interruptions caused by disturbance to those whose attendance upon the courts is compelled by duty or necessity. The rule was established for the protection of the courts that they might the better administer justice, free from interference with and intimidation of suitors, solicitors and witnesses and disturbance of the court's officers in the exercise of their duties, and became a privilege that affected persons in their several capacities only as their protection from process rendered the administration of justice more certain and complete. The privilege arises out of the authority and dignity of the court, it is founded on the necessities of judicial administration, it has for its primal object the protection of the court and not the immunity of the person, and is extended or withheld only as judicial necessities require. *Year Book*, 20 *Henry VI.*, 10; *Bacon's Abr. "Privilege,"* B, 2; *Sellon's Pr.* 126; *Tidd's Pr.* 196; *Starret's Case,* 1 *Dall.* 357, 1 *L. Ed.* 174; *Hurst's Case*, 4 *Dall.* 387, 1 *L. Ed.* 878; *Brooks v. Patterson*, 2 *Johns. Cas.* (*N. Y.*) 102; *Parker v. Hotchkiss*, 1 *Wall. Jr.* 269, *Fed. Cas. No.* 10,739; *Halsey v. Stewart*, 4 *N. J. Law*, 366; *Bridges v. Sheldon* (*C. C.*) 7 *Fed.* 17, 43; *Larned v. Griffin* (*C. C.*) 12 *Fed.* 590; *Nichols v. Horton* (*C. C.*) 14 *Fed.* 327, 329, 330; *Hale v. Wharton* (*C. C.*) 73 *Fed.* 739, 740, 741; *C. T. C. v. M. S. Ry. Co.* (*C. C.*) 74 *Fed.* 442; *Person v. Grier*, 66 *N. Y.* 124, 23 *Am. Rep.* 35; *Matthews v. Tufts*, 87 *N. Y.* 568; *Mulhearn v. Press Publishing Company*, 53 *N. J. Law*, 153, 156, 21 *Atl.* 186, 11 *L. R. A.* 101.

A close examination of the leading cases cited, as well as of many other English and American authorities, discloses that the principle which uniformly underlies the decisions is that the privilege or exemption from service of process is extended and is limited to those persons whose duty requires their attendance upon the court and whose presence is necessary to the court in the performance of its function of administering justice, and in no instance do we find a case where immunity is given a person who appears before the court in any capacity, unless his appearance be in response to a duty or his presence be necessary to the court. Applying to the case in hand the test of duty or necessity, it remains to determine whether it was the duty of George H. Brooks

to attend the argument in which his corporation was a party and whether his presence was necessary to the court in properly disposing of the matter before it.

Goerge H. Brooks was neither a party nor a witness in the court upon which he was in attendance; by his absence he would have violated no duty to the court and by his presence he could have rendered the court no aid. Whatever assistance he may have rendered the solicitor for his corporation, cannot be construed by indirection to be an assistance to the court of a nature that would make his presence necessary within the rule. He was present at an argument in which he could have given no testimony. He was there in the capacity of an agent of one of the litigating parties, and in this he was in no different position and is entitled to no further immunity than would have been a director of a corporation, the secretary of an unincorporated association, or the business manager of a partnership, when present under like circumstances. Any other rule would enable a party and not the court to extend the privilege and determine the necessity of a person's presence, and would extend the class of privileged persons from those over whom the court has control to all those who might be deemed by a party to be necessary to him or to his counsel in the preparation and presentation of a case. We are therefore of opinion that the service of the rule was valid and that the court below committed no error in refusing to vacate it

2. The Geo. Brooks and Son Company, being a private corporation in the sense that its charter powers relate to a manufacturing business for the personal gain of its stockholders and not to matters in which the public have a beneficial interest, and its officers being private officers in the sense that they have no public services to perform, the question is raised whether the remedy of an information in the nature of a writ of *quo warranto* will extend to the usurpation of an office in a corporation of such a private nature.

Whatever may have been the origin and history of the writ of *quo warranto* and of its succeeding remedy, an information in the nature of a writ of *quo warranto*, it is certain that the latter was a

part of that vast mass of remedies for wrongs which was brought over by the early English settlers, and which by statutory and constitutional enactments, beginning in 1736 (*Laws of Delaware, Vol.* 1, *pp.* 121, 122) and concluding only with the existing Constitution, was by the general adoption of the powers of the King's Bench, made a part of our civil judicature, here to remain, ready to be invoked for the first time in the case of *State v. Stewart* in 1881 (6 *Houst.* 359), and to be subjected to judicial construction for the first time by an appellate court of this state in the case now under consideration.

A writ of *quo warranto* was in the nature of a writ of right for the king against him who claimed or usurped any office, franchise or liberty, to inquire by what authority he supported his claim, in order to determine the right.  Little is known of its origin as its history is obscured by antiquity.  Nor is there any historical certainty of the origin of the remedy by information in the nature of a writ of *quo warranto*, which succeeded and later superseded the original remedy, nor is its history important in the present consideration, in view of the fact that it is known that the remedy by information was in use contemporaneously with the remedy of the writ of *quo warranto* as a common-law remedy long before the statute of 9 *Anne, Ch.* 20 (1711), and that that statute was not the origin of the proceeding by information, for by its fourth section there is an express recognition of its pre-existence. It is further known that the statute of Anne was limited in its territorial scope and conferred upon the courts jurisdiction to employ the remedy by information only with respect to those offices and franchises of a public and politcal character originally derived from the king, that were particularly enumerated in its preamble.  This statute was never in force in this or any other American colony (*State v. Stewart, supra*), therefore the remedy by information, which was adopted in Delaware by reference to that of the common law, was the common-law remedy by information in the nature of a writ of *quo warranto* and not the statutory remedy.

While differing in origin, form and procedure from the writ of *quo warranto*, the common-law remedy by information, like the

ancient writ, was the proceeding by which to try the right to an office or franchise, and it seems to have been long settled in England that the office with respect to which the remedy by information would lie, must have been public in its nature. (12 *Cl. & Fin.* 520.) Hence the contention of the plaintiff in error, that under the remedy we have adopted by the general terms of our statutes and constitutions, we are bound to limit it to the same kind of public offices to which it was extended at common law, and that it will not lie "to try the title to an office in a corporation strictly commercial and private."

There is no doubt that the remedy by information may not be invoked for the redress of mere private grievances (*Spelling's Ex. Rem.* §§ 1830, 1831), and can only be invoked when wrong has been done to the public. Hence it follows, if a wrong complained of be the usurpation of an office, it must be the usurpation of an office public in character, otherwise the people cannot be called upon in their sovereignty to petition for its redress.

This brings us to a consideration of what is a public office. At the time the common-law remedy by information was employed in England, public offices seem to have been only those which were a part of the apparatus of government at large, or that of municipalities, cities and boroughs. Here, as in England, we have offices of the same public character in our municipal corporations, created and established by acts of the Legislature, in regard to the protection of which, by the remedy of an information, there can be no question; and we have as well a large number of corporate offices, created by special and general legislative authority in connection with grants of corporate franchises. These offices are created so that the design of the grant may be effectuated and the existence of the corporation perpetuated by the due and regular election of officers in accord with the rules and laws of their governance. Those who fill the offices are alike amenable to the law of their origin. With respect to the manner of their creation, there is in principle no difference between the office of mayor of a municipal corporation and that of president of a state bank, created alike by special acts of the Legislature, nor in principle is there any difference between the office of director of a bank,

created by special act of the Legislature and the office of a director
of a manufacturing corporation created under the general provi-
sions of a law providing for the grant of corporate franchises.  If
the public character of the latter offices, when the remedy by
information is applied to them, is to be determined by the char-
acter of the public offices that prevailed in England at the time
of the adoption of the remedy, then indeed, the law is a stationary
thing, and acts on precedent rather than upon principle.

The public character of a corporation and of its offices, when
viewed with respect to the remedy under consideration and as
distinguished from corporations and offices that are public in a
political sense, is not to be determined by the nature or purpose
of its business, but is to be determined by the character of its
origin and the policy of the law.  In the case of *People v. Utica
Insurance Company*, 15 *Johns.* (*N. Y.*) 386 (8 *Am. Dec.* 243), the
Supreme Court of the State of New York, in emphatic language
held: "That every privilege or immunity of a public nature, which
cannot legally be exercised without legislative grant is a public
franchise."  Followed in *State v. Ashley*, 1 *Ark.* 513, 536.  The
privileges and immunities of a corporation, even in a business of
the most private character, cannot be exercised except by legis-
lative grant.  A corporation is a franchise (*Com. Digest, tit. Corp.
F.*), and when granted only by legislative authority or by force
of the public will, it becomes a public franchise.  In our system of
government all franchises repose in the people and, when parted
with, are granted by the people under an established system of
law, which directs the method of their use and provides against
their abuse.  Corporations for private gain, whether created
directly by act of the Legislature or indirectly under the general
authority of a corporation law, differ in no essential that affects
the public character of the grant of the franchise, from corpora-
tions created for purely public purposes.  Their corporate powers
spring alike from the same source, their organization is directed
by the same hand, their regulation and restraint are controlled
by the same authority and they are answerable alike to the same
sovereignty.  If a corporation is chartered by the state to engage
in what would otherwise be a private business, surely it is not

thereby necessarily a private corporation. Like a corporation for public purposes, it acts only upon license. Its transactions are interlaced with the whole of business life as defined and controlled by law, it can do lawfully only those things and can do them only in the manner prescribed by the law of its charter and of the state, and whatever may be the purpose of its creation, whether for private profit or public good, its offices are public in the sense that enables the state by proper remedies to compel obedience and prevent disobedience of its laws.

We are of opinion that the offices of a corporation created by special act of the legislature or under the provisions of the general corporation law of this state, are offices of a public character within the meaning that the remedy by information in the nature of a writ of *quo warranto* lies against one who usurps such an office. *Angell on Corp.* 476, 478, 480; *Com. v. Arrison*, 15 *Serg. & R. (Pa.)* 127, 16 *Am. Dec.* 531; *Atty. General v. Utica Ins. Co.*, 2 *Johns. Ch. (N. Y.)* 371; *Atty. Gen. v. Utica Ins. Co.*, 15 *Johns. (N. Y.)* 358, 8 *Am. Dec.* 243; *Com. v. Union Ins. Co.*, 5 *Mass.* 231, 4 *Am. Dec.* 50; *Gunton v. Ingle*, 4 *Cranch, C. C.* 438, *Fed. Cas, No.* 5,870; *People v. Tibbets*, 4 *Cow. (N. Y.)* 388; *State v. Stewart*, 6 *Houst.* 359; *State v. Hunton*, 28 *Vt.* 594; *Hullman v. Honcomp*, 5 *Ohio St.* 237; *State v. Tudor*, 5 *Day (Conn.)* 329, 5 *Am. Dec.* 162; 23 *A. & E. Ency. of Law (2d Ed.)* 640; 32 *Cyc.* 1425; *Spelling's Ex. Rem.* §§ 1831, 1842, 1855.

3. The next question presented by the assignment of errors is whether the proceeding is properly entitled in the name of the State of Delaware upon the relation of the Attorney General. This is a mixed question of parties and procedure.

By the fiction of the feudal law the king was the fountain whence all franchises were derived, the exercise of any of which without regal grant was considered a usurpation of the king's prerogative. Hence the writ of *quo warranto* became a prerogative writ that issued of right, wherein the king, being the sole party in interest, instituted the action in his own name, in his own right, by his Attorney General.

The proceeding by information in the nature of a writ of *quo warranto* that existed contemporaneously at common law with the

· writ of *quo warranto*, and which is the remedy that has been adopted in this state, was instituted in the name of the crown upon the information of the Attorney General, and was prerogative in the sense that it was allowed only within the exercise of judicial discretion.

The information in the nature of a writ of *quo warranto* contemplated by the statute of Anne was by the provisions of that statute extended to private persons for the redress of their wrongs, and hence the remedy under that statute, while still prerogative in its nature in that it cannot be employed without leave, is entitled in the name of the king upon the relation of a private person. As that statute is not in force in this state, the practice under it is not here followed.

In most of the American jurisdictions that provide statutory remedies by *quo warranto*, their statutes are modeled after the statute of Anne, and the proceeding, while prerogative, is entitled in the name of the state, people, or commonwealth upon the relation of a private individual, and represented by a state or county attorney.

From this analysis it will appear that the prerogative character of the proceeding, whatsoever its origin, has been preserved from its earliest uses down to the present time; and probably there are no exceptions to the rule that the proceeding, being in theory a prosecution (*Wright v. People*, 15 *Ill*. 417), must be instituted and prosecuted in the name of the state or of a public officer representing the sovereignty (*Respublica v. Griffiths*, 2 *U. S.* 112, 1 *L. Ed.* 311; *Spelling's Ex. Rem.* § 1766).

As we have held that the common-law proceeding by information in the nature of a writ of *quo warranto* is the proceeding adopted in this state, it follows that the common-law manner of entitling and instituting the proceeding prevails in this state. *Rex v. City of London*, 3 *Har. St. Tr.* 545.

When considered with respect to the principles that apply to the relation of the state to its franchises, previously considered, as well as to preserve the remedy in symmetry with its original, the proceeding should be entitled in the name of the State of Delaware upon the relation of the Attorney General.

As in Delaware the proceeding retains its prerogative character, it is instituted by the Attorney General, on behalf of the state, upon motion for a rule upon the defendant to show cause why leave should not be granted to file an information in the nature of a writ of *quo warranto* against him.

The rule issues upon the *ex parte* application of the relator (*Lynch v. Martin*, 6 *Houst.* 487; *State v. Hancock*, 2 *Penn.* 252, 256, 45 *Atl.* 851), and is heard upon the affidavits and counter affidavits filed by the parties (*Lynch v. Martin*, 6 *Houst.* 487). The granting of the leave rests in the sound discretion of the court. *Lynch v. Martin*, 6 *Houst.* 487. When leave is granted, the rule is made absolute and the information filed. Like other rules it is subject to a motion to discharge, which when made should be accompanied with a corresponding motion to dismiss the information. If such motions are not made, or, if made, are not allowed, then the case proceeds to pleading, the first rule being on the defendant.

4. The next question suggested by the assignment of errors is whether a replication may contain new matter in reply to a plea concluding with the *absque hoc*. This is a question of pleading and its solution requires an investigation into very nearly the whole subject of pleading in the form of remedy under consideration.

Briefly stated, the information charges usurpation generally, the plea denies usurpation specially, and sets up title to the office in the defendant, and the replication takes issue on the traverse of usurpation and replies new matter in avoidance of the title set up in the plea. The substance of the contention of the plaintiff in error is that the information is the narr., the plea by the *absque hoc* is a special traverse of the averments of the narr., upon which the plaintiff is bound to take issue, that the reply of the plaintiff of new matter in the replication is a reply to the inducement of the plea, and is bad, in that it is not allowable and amounts in effect to a departure from the information.

The pleading in the remedy by information in the nature of a writ of *quo warranto* is in harmony with the history and in accord with the theory of the proceeding. While in those states

that have statutory remedies of *quo warranto* the right to an
office is sometimes determined by trying the title of the relator
as well as that of the defendant (*State v. Heinmiller*, 38 *Ohio St.*
101), yet at common law and in this state the proceeding by
information has never been considered an election contest between
contesting candidates for an office, from which the sitting candi-
date may be ousted and into which the contesting candidate may
be inducted, but it is a proceeding by which may be tried and
determined the fact of usurpation of an office by an incumbent,
the decree in which, if against the defendant, is one of ouster,
regardless of the rights or title of the relator.

The proceeding by information being in theory, as at one
time it was in fact, a prosecution, the information as a pleading is
less of a narr. than a complaint or accusation against the defend-
ant for an offense.   4 *Bla. Com.* 308.   By the information the
defendant is accused of usurping a particular office, and is called
upon to show by what authority he holds it, and is not called
upon to try his title against the title of the relator as might be
required of him in pleadings begun by narr.

The chief characteristics of an information are, first, the
accusation of an usurpation; and, second, the demand that the
defendant show the authority for his claim.   Upon the first,
being a statement of fact and presenting an issue, the defendant
may take issue by plea; upon the second, being no statement of
fact and presenting no issue, he cannot take issue by plea.   There-
fore when the defendant is called upon to plead to an information,
he must admit or traverse the usurpation and disclaim or justify
title, right or authority in or to the thing he is charged to have
usurped.   If he admit usurpation or disclaim title, the prosecution
is entitled to judgment; if he traverse the usurpation and justify
under his title, he may have his rights determined by trial.   The
plea of not guilty is not a sufficient answer, as it amounts simply
to a traverse of the allegation of usurpation, and, like the plea of
*non usurpavit*, fails to respond to the demand of the informa-
tion that the defendant show his title, right or authority.   *Atty.
General v. Foot*, 11 *Wis.* 14, 78 *Am. Dec.* 689; *State v. Saxon*, 25
*Fla.* 342, 5 *South.* 801; *Spelling's Ex. Rem.* § 1861; *Shortt, Ex.*

*Rem.* 178. The information can be sufficiently answered only by a plea that traverses the usurpation and justifies the title, right or authority. *Holden v. People*, 90 *Ill.* 434; *Catlett v. People*, 151 *Ill.* 16, 37 *N. E.* 855; *State v. Olcott*, 6 *N. H.* 74, 75; *Clark v. People*, 15 *Ill.* 213; *State v. Ashley*, 1 *Ark.* 513. The plea of justification must show all the facts necessary to establish the lawful right of the defendant in the matter. It is the first pleading that indicates the facts upon which the controversy has arisen. It is an affirmative showing, the burden of maintaining which is upon the defendant, and should be concluded with a verification. *People v. Crawford*, 28 *Mich.* 88, 89; *State v. McCann*, 88 *Mo.* 386; *State v. Ashley*, 1 *Ark.* 513; *Spelling's Ex. Rem.* §§ 1857, 1858, 1859.

To a plea traversing usurpation and justifying, there is no question that the relator may demur (*State v. Hancock*, 2 *Penn.* 522, 263, 265, 45 *Atl.* 851; *State v. Churchman*, 3 *Penn.* 167, 174, 49 Atl. 381; *People v. K. R. I. Co.*, 103 *Ill.* 491, 511), or join issue on the facts therein stated (*People v. Crawford*, 28 *Mich.* 88; *State v. McCann*, 88 *Mo.* 386; *People v. K. R. I. Co.*, 103 *Ill.* 491, 511); the question in this case being whether the relator must join issue on the plea or may reply by way of confession and avoidance.

By the subtlety of a special traverse which the defendant in form has pleaded, he contends that the matter of justification shown by his plea is but inducement to his traverse of usurpation, that instead of joining issue on the traverse, the relator has replied to the inducement by matter in avoidance thereof, or in other words, the replication traverses a traverse, and therefore is bad.

There is a question, however, whether the plea in this case is a good special traverse, or is a special traverse at all within the rule of pleading, although in form it concludes with the technical words of *absque hoc*, as do the pleas in the cases of *State v. Hancock*, 2 *Penn.* 252, 263, 265, 45 *Atl.* 851, and *State v. Churchman*, 3 *Penn.* 167, 49 *Atl.* 381, and in the English forms given in *Wentworth's Pleading*, 33, 39, 147, 151, 158. Nevertheless, the plea by the *absque hoc* certainly could have been intended for use only in

a case in which the narr. tenders an issue or in respect to something that calls for a denial.    While an information in the nature of a writ of *quo warranto* is dual in its function, the one issue tendered by it is that of usurpation, and the issue expressly excluded from it is that of the relator's title.    If the relator's title were in issue, as the title of the plaintiff in an action to recover real property, as shown by Mr. Stephen's example (*Stephen's Plead*. 164-189), or as the title of the plaintiff in an action of replevin to recover or retain personal property, as recently shown in the case of *Beatty v. Parsons*, 2 *Boyce*, 134, 78 *Atl*. 302, we can readily see how the defendant, through the medium of a special traverse, could avoid the title of the plaintiff, by pleading title or property in himself or in another, "without this, that" the title or property is in the plaintiff as averred in the narr., but when the relator's title is not in issue, it cannot be traversed.    The title shown by the defendant in his plea is a justification for the act for which usurpation is charged, and is not a defense to a claim of title by the relator.    Such a justification, therefore, cannot be the inducement of a special traverse or otherwise accord with the purpose and theory of a special traverse, as laid down by Mr. Stephen. In the case of *Rex v. Blagden*, *Gilb*. 145, cited in the *People v. Richardson*, 4 *Cow*. (*N. Y.*) 97, 100-119, the court refers to the plea in *quo warranto* as a "general traverse," by saying that    "The replication should not take issue on the *general* traverse, *without this*, *that he usurped*, *etc*., but should be to the special matter, that the defendant may know how to apply his defense."    The authorities certainly and abundantly hold that to this special matter, which is the matter of justification, the relator may reply by new matter in confession and avoidance, which is contrary to the rule of a special traverse, and thereafter the pleadings are as in actions.    *People v. Richardson*, 4 *Cow*. (*N. Y.*) 119;  *Rex v. Blagden*, *Gilbert's Rep*. 145;  *People v. P. P. R. R. Co*., 31 *Mich*. 178;  *Atty. Genl. v. May*, 97 *Mich*. 568, 56 *N. W*. 1035;  *People v. Bank of Niagara*, 6 *Cow*. (*N. Y.*) 196;  *Atty. Gen. v. Booth*, 143 *Mich*. 89, 106 *N. W*, 868;  *People v. K. R. I. Co*., 103 *Ill*. 491, 511;  *People v. Crawford*. 28 *Mich*. 88, 89;  *State v. McCann*, 88 *Mo*. 386;  *Spelling's Ex. Rem*. § 1846;  *Shortt's Ex. Rem*. 180, 181.

Especial consideration has been given to the case of *People v. Bank of Niagara*, 6 *Cow.* (*N. Y.*) 196 (1826), as that case and one cited by it show conclusively the pleading in *quo warranto* in force in Delaware. That case was upon an information in the nature of the writ of *quo warranto*, brought by the Attorney General of the people of the State of New York, in which the information charged usurpation generally and prayed that the president, directors and company of the respondent bank be made to answer to the people by what warrant they claim to have, use and enjoy certain liberties, privileges and franchises. The defendants by their plea admitted incorporation, traversed the charge of usurpation and justified. The Attorney General replied specially showing causes of forfeiture. The respondents contended that the information was bad because it did not state the causes of forfeiture and that the replication was bad because its statement of causes of forfeiture amounted to a departure from the information. The case is interesting in that the form of the information filed in that case is identical, *mutatis mutandis*, with the form in the case under consideration, and is stated by Savage, C. J., to have been adopted from the form used in the celebrated case of the King against the City of London, tried in the King's Bench in 1682-83 and which was there adjudged sufficient. The court held that an information in the nature of a *quo warranto* against a corporation for a forfeiture of its franchises may charge it generally with usurpation, and on the defendant setting forth the act of incorporation and justifying under it the Attorney General may reply the causes of forfeiture specially, and that such a replication is not a departure. The case cited by Chief Justice Savage as the authority for this ruling is that of Car. II, by his Attorney General, against the Lord Mayor, Commonalty and Citizens of London, a report of which is to be found in 3 *Hargrave's State Trials*, 545. This case is probably one of the most celebrated state trials in history, being instituted by that king against the corporation of London, upon the information of his Attorney-General in the nature of a writ of *quo warranto*, charging usurpation without regal grant of the liberties and privileges of the city, and whereby the metropolis of the kingdom was deprived of its charter and mag-

istrates until restored by King James in 1688. In that case, as in the *Niagara Bank case*, the averment of usurpation contained in the information was most general, the defendants pleaded incorporation and showed the title by which they exercised the franchises of the city and traversed the charge of usurpation. The Attorney General by his replication did not take issue on the matter of justification, but showed causes of forfeiture, and the pleading thereafter proceeded as in civil cases.

It thus appears that the information in the case at bar is in the exact form of the information in the *Niagara Bank case*, that the plea in that case, concluding with the traverse, "without this, that," is like the one filed in this case, that the Attorney General in that case as in this one replied by new matter in avoidance, and that the rulings of the court below in this case upon question of procedure are supported by the authority of the *Niagara Bank case*. But more important is the statement of Savage, C. J., that the *Niagara Bank case* was decided on the authority of the case against the City of London, and we find that the form of information and manner of pleading in the case against the City of London are in exact and technical accord with the pleadings in the *Niagara Bank case* and in the case at bar. And this should be so, for the case against the City of London was tried in 1682-83, or 28 years *before* the statute of Anne (1711), and was a case tried by the common-law remedy by information in the nature of a writ of *quo warranto*. As we have held that was the remedy adopted in this state, it follows that we have adopted the practice and procedure that belong to it. We are therefore of the opinion that the court below committed no error in holding that the information and replication in their form are sufficient in law for the State of Delaware to maintain its action.

5. We hold that this proceeding is not futile and nugatory for reasons that previously appear in the consideration of other questions. *Spelling's Ex. Rem.* §§ 1786, 1788.

6. The court below, in holding the sufficiency of the form of the pleadings in this case, also held the matters therein contained to be sufficient in law for the state to maintain its action; and finding George H. Brooks guilty of usurping the office of director

of the Geo. Brooks and Son Company, rendered against him a judgment of ouster. This raises the question to which all the other questions were preliminary, and embraces the construction of the provisions of our Constitution and statute relating to the voting power of stock.

At the time of the incorporation of Geo. Brooks and Son Company, it was provided by *Section* 13 of the *General Corporation Law* (22 *Del. Laws*, *c.* 167), that "every corporation shall have power to create two or more kinds of stock of such classes, with such designations, preferences and *voting powers* or restrictions or qualifications thereof, as shall be stated and expressed in the certificate of incorporation." Supplementary to this provision was another (*Section* 17) which directed that "*unless otherwise provided* in the charter, certificate or by-laws of the corporation, each stockholder * * * shall at every election be entitled to one vote * * * for each share of the capital stock held by him. * * *" Pursuant to these provisions, the incorporators proceeded to incorporate their company otherwise, and by charter and by-laws deprived its preferred stock of any voting power and vested the whole voting power in its common stock. The sections of the general corporation law above quoted and under which the incorporators acted, are identical with the sections (18 and 36) of the general corporation law of New Jersey (*P. L.* 1896, *p.* 277), from which obviously they were taken. *Wilm. City Ry. Co. v. W. & B. S. Ry. Co.*, 8 *Del. Ch.* 468, 46 *Atl.* 12. The two laws are also similar in providing that "the certificate of incorporation may also contain any provision * * * for the regulation of the business: * * * Provided, such provisions are not contrary to the laws of this state" (22 *Del. Laws*, *c.* 167, § 5, *subd.* 8, and *P. L. N. J.* 1896, *p.* 280, § 8). At the time of the enactment of the New Jersey law there was in that state no consitutional provision relating to the voting power of stock, but at the time of the enactment of the Delaware law, March 10, 1899 (21 *Del. Laws*, *c.* 273), and of the incorporation of the Geo. Brooks and Son Company (1901), there was in this state a constitutional provision that directed that "in all elections for directors or managers of stock corporations, each share-

holder shall be entitled to one vote for each share of stock he may hold." *Const.* 1897, *art.* 9, § 6.   We are therefore called upon to construe the meaning of the constitutional provision and to determine whether the provisions of the statute and of the char- ter granted under them are provisions "contrary to the law of this state," and thereby determine whether the preferred stock of the Geo. Brooks and Son Company has or has not voting power.

It is important to state, and make clear, that the constitu- tional provision referred to, and with respect to which it is sug- gested that the subsequent laws and charter are not in harmony, was repealed in 1903 by acts of the General Assembly (*Laws of Delaware, Volume* 22, *Chapter* 1, *pp.* 3, 4, and *Chapter* 254, *p.* 543), and is not the law of this state today.   Therefore the re- mainder of this opinion, and the decision under it, relate only to the state of the law, constitutional and statutory, as it existed before the date of the repeal of *Section* 6 of *Article* 9 of the *Consti- tution* of 1897.

With respect to the constitutional provision in question, it is the contention of the defendant in error that "This section does not mean that the Legislature could not provide for certain classes of stock having restricted voting powers or no voting powers at all.   It means only that voting in corporations shall be according to the number of shares held by the stockholder *having the right to vote* and not one vote for each stockholder, irrespective of his share holdings, as was the rule at common law."   In other words, it is contended that the effect of the provision was simply to change the common-law rule of one vote for each shareholder, regardless of the number of shares held by him, to one vote for each share held by the shareholder, and that his right to a share vote was not derived from the constitutional provision, but was extended or limited by the charter of the corporation when cre- ated under a statute subsequently enacted, which allowed the incorporators to create several classes of stock and to define and regulate the voting power of each class.

It is further contended that the constitutional provision at most confers upon stockholders a right to a share vote, which right is waived by them when they incorporate a company that by *its*

charter takes from them, as the holders of one class, the right to vote.

The plaintiff in error contends that, the Constitution having expressly declared who shall be entitled to vote for directors, its provisions were imperative upon the corporation, constituting a part of the law of its being, and a corporation had no authority under statutes subsequently enacted, that provide otherwise, to limit the right as regulated by the Constitution.

A by-law that restricts or alters the voting power of stock of a corporation as established by the law of its charter, is of course void. *People v. Tibbets*, 4 *Cow.* (*N. Y.*) 358; *People v. Kip*, 4 *Cow.* (*N. Y.*) 382, note.

A provision in a charter of a corporation, giving to its stock a voting power different from that contemplated by the statute under which it was created, is likewise void. *Brewster v. Hartley*, 37 *Cal.* 15, 24, 99 *Am. Dec.* 237; *Audenried v. E. C. M. Co.*, 68 *N. J. Eq.* 450, 59 *Atl.* 577, 584; *Com. v. Conover*, 10 *Phila.* (*Pa.*) 55; *Taylor v. Griswold*, 14 *N. J. Law*, 222, 27 *Am. Dec.* 33; *People v. C. G. T. Co.*, 130 *Ill.* 268, 22 *N. E.* 798, 8 *L. R. A.* 497, 17 *Am. St. Rep.* 319; *E. P. R. Co. v. Vaughan*, 14 *N. Y.* 546, 551; *Com. v. Yetter*, 190 *Pa.* 488, 495, 496, 43 *Atl.* 226.

A statute that authorizes a corporation to give to its stock a voting power different from that prescribed by the Constitution is equally void.

The question, therefore, is narrowed down to whether the Constitution established the voting power of stock or conferred a personal privilege that might be waived.

Considering the question in the reverse order, we find the statement of the defendant in error, that "a person may waive *any* provision either of contract or statute intended for his *benefit*," is not supported by the authorities cited, when considered in relation to the provision under construction. The cases cited relate to provisions of statutes that are made for the particular and personal protection of one solely interested, and which may be waived without infringing upon the rights of others or affecting public policy. The cases cited go to the right of one to waive notice of depositions, or notice of a continuance, or notice to him-

self as tenant, or the right to file a contractor's lien, as well as the protection of the Constitution forbidding the taking of property without process or compensation. *Shutte v. Thompson*, 15 *Wall.* 151, 159, 21 *L. Ed.* 123; *Morrison v. Underwood*, 5 *Cush. (Mass.)* 52; *Phyfe v. Eimer*, 45 *N. Y.* 102; *Bowen v. Aubrey*, 22 *Cal.* 566, 572; *Endlich on Interpretation of Statutes*, §§ 444, 537; *Cooley's Const. Lim.* 181.

Disregarding the excerpt from the debates of the constitutional convention that adopted the section, the language of the provision alone is sufficiently clear and unambiguous to indicate that the purpose of the convention was to change the control of stock corporations from individual control to stock control, to do which it directly gave to a share of stock the quality of a vote. In doing this it made no discrimination between different classes of stock which subsequent laws might authorize, but provided generally that the holder of a share of stock was the holder of a vote which he was entitled to cast. Being the holder of an interest in property that conferred upon him the right *pro tanto* to control and regulate that property, the holder of a share of stock was then possessed of a personal privilege or benefit which he might use or reject as he chose (*State v. Ashley*, 1 *Ark.* 513, 549), and it is in this sense that a person may waive the provision of a law intended for his benefit. Being the owner of a share of stock with a voting power given it by the Constitution, he was by the possession of the share possessed of a privilege, but he could not by any act of his change the character of the share that gave him the privilege or rob it of the voting power conferred upon it by the Constitution, so that in his hands or in the hands of any subsequent holder it would not carry the power conferred upon it at its birth by the law that authorized its existence.

The general corporation law that was enacted subsequently to the adoption of the Constitution of 1897, under the terms of which the preferred stock of Geo. Brooks and Son Company was deprived of voting power, must have been enacted in ignorance of the constitutional provision then existing. It was this law, passed two years later, that authorized a corporation created unde it to give to its stock such preference and voting power as it migh

express in its certificate of incorporation.    Surely the members of the constitutional convention could not have had this law and its provisions in mind when they adopted the constitutional provision in question, nor could they have included in their understanding of it any reference or relation to such a law, as is urged by the defendant in error, who contends that the provision really means that "in all elections for directors or managers of stock corporations each shareholder (*who shall be entitled to vote*) shall be entitled to one vote for each share of stock he may hold."

We are of opinion that by force of the constitutional provision (*section* 6 of *article* 9), as it existed at the time of the incorporation of the Geo. Brooks and Son Company, the holders of the preferred stock of that company were entitled to one vote for each share of preferred stock they held, and there having been cast for George H. Brooks, at the election for directors, as many votes as there were shares of preferred stock, together with votes upon the common stock sufficient to give him a majority of all the votes cast, we are further of opinion that George H. Brooks was legally elected director under the law as then existing.    *Wilm. City Ry. Co. v. W. & B. S. Ry. Co.*, 8 *Del. Ch.* 468, 491-494, 46 *Atl.* 12; *Tomlinson v. Jessup*, 15 *Wall.* 454, 457, 21 *L. Ed.* 204; *Holyoke Co. v. Lyman*, 15 *Wall.* 500, 522, 21 *L. Ed.* 133; *Bixler v. Summerfield*, 195 *Ill.* 147, 62 *N. E.* 849; *Taylor v. Griswold*, 14 *N. J. Law*, 222, 27 *Am. Dec.* 33; *State v. Anderson*, 31 *Ind. App.* 34, 67 *N. E.* 207; *Oregon Ry. Co. v. O. Ry. Co.*, 130 *U. S.* 1, 9 *Sup. Ct.* 409, 32 *L. Ed.* 837; *Morawetz on Private Corporations*, § 1054; *Thompson on Corporations*, § 216.

The judgment of ouster entered by the court below is reversed and the case remanded.