THE STATE OF DELAWARE upon the relation of JOSIAH O. WOL-
    COTT, Attorney General, vs. ASHBY LEE BIEDLER, HENRY C.
    DUNLAP, WILLIAM J. KEHOE, ROBERT Y. SLATER, ERASMUS
    B. WAPLES and CHARLES W. SLATER.

1.   PROCESS—PRIVILEGE—ATTENDANCE AT COURT—GROUNDS.

The tendency has been to enlarge the rule that witnesses in judicial proceedings, while going to the place of such proceedings, and while remaining there as long as necessary, and while returning, are wholly free from the restraint of process in other civil proceedings, on the broad ground of public policy and the general administration of the law.

2.   PROCESS—PRIVILEGE—WITNESSES—CHARACTER OF TESTIMONY.

On a rule to show cause why leave should not be granted to file an information in the nature of a *quo warranto* to inquire into respondents' exercise of the franchises, offices, and privileges of directors of a corporation, where part of the respondents set up their privilege from service of the rule on the ground

of their attendance as witnesses in a pending action against the corporation, it was immaterial that they testified therein for the corporation and in support of their title to the office of director, if they acted in good faith and their testimony was material in that action, and if there was nothing to show that they were seeking to establish an unjust or illegal claim, or were guilty of any fraud, collusion, or improper motive, in coming into the state, or in giving their testimony.

3. QUO WARRANTO—NATURE OF PROCEEDING.

An information in the nature of a *quo warranto* is not a criminal action, but, though the state is the nominal plaintiff and the Attorney General the relator, is to all intents and purposes a civil action.

4. QUO WARRANTO—NATURE OF PROCEEDING—PARTIES.

While the state is the nominal plaintiff in an action in the nature of a *quo warranto*, and the Attorney General is the relator in actions where individual directors of corporations are seeking to oust others claiming to be entitled to the office, etc., neither the state, nor its representative, is the real party in interest.

(*May* 29, 1916.)

PENNEWILL, C. J., BOYCE and CONRAD, JUDGES, sitting.

*Hugh M. Morris*, of *Saulsbury, Morris* and *Rodney*, for the State.

*James M. Tunnell* of Georgetown, and *John J. O'Conner* of New York, appearing specially, for respondents.

Superior Court for New Castle County.

RULE to show cause why information should not be filed, No. 81, January Term, 1916.

In court in *Banc*.

PENNEWILL, C. J., BOYCE, CONRAD, RICE and HEISEL, J. J., sitting.

Information in the nature of a *quo warranto* by the State of Delaware, upon the relation of Josiah O. Wolcott, Attorney General, against Ashby Lee Biedler, Henry C. Dunlap, William J. Kehoe, Robert Y. Slater, Erasmus B. Waples, and Charles W. Slater, with accompanying affidavits and exhibits presented to the court, asking for a rule upon the respondents to show cause why leave should not be granted to file the same. Rule granted. On motion to vacate service of rule to show cause. Granted as to Henry C. Dunlap, Robert Y. Slater, and Charles W. Slater, and denied as to Erasmus B. Waples, and rule as to him made absolute, with leave to file information against him.

Statement.

It was averred in the information, *inter alia:*

"That, under the provisions of the general corporation law of the State of Delaware (*Rev. Code* 1915, *c.* 65), on or about the ninth day of October, A. D. 1913, Kehoe Stenograph Company was created a corporation of the State of Delaware, and thereafter duly organized with all franchises, privileges and rights of a corporation, and that for a long time prior to, on and after the first day of October, A. D. 1914, Julius Strauss, Alonzo C. McLaughlin and A. G. Walsh, were and are the lawfully elected and duly chosen and duly qualified directors of said corporation, holding office as such until their successors shall be duly elected and qualified, and that notwithstanding the premises, Ashby Lee Biedler, Henry C. Dunlap, William J. Kehoe, Robert Y. Slater, Erasmus B. Waples, and Charles W. Slater have during all the time since the first day of October, A. D. 1914, used and still do use the franchises, offices, privileges and liberties of directors of the said Kehoe Stenograph Company, and during the said time hitherto the said franchises, offices, privileges and liberties of directors of the said company have usurped and still do usurp to the damage and prejudice of the State of Delaware."

The information concluded with the usual prayer for a writ of *quo warranto.*

The sheriff made return endorsed on the rule:

"Served the within rule personally on Henry C, Dunlap, Robert Y. Slater and Charles W. Slater, on," etc., "and served　＊　＊　＊　personally on Erasmus B. Waples, on," etc., "so ans.," etc.

On the return day of the rule, James M. Tunnell, Esq., representing the several persons on whom the rule was personally served, presented a petition to the court, asking leave to appear specially for said persons for the sole purpose of moving to vacate the sheriff's return of service of the rule upon each of said persons, they claiming, as alleged in the petition, privilege and exemption from service of process under the circumstances set out in the several affidavits filed therewith; that is, in substance, each, at the time of the service of the rule, claimed to be directors of the Kehoe Stenograph Company, and also each was present in the state to give testimony for the defendant in the case of *Lippman v. Kehoe Stenograph Company*, then on a hearing before the Chancellor of the State, in Wilmington.

The facts disclosed by the affidavits of the respondents are more fully stated in the opinion of the court. One of the affidavits filed in opposition to the motion is, in part, as follows:

"The said Robert Y. Slater at the time he was served with process in this proceeding was using the franchises, offices, privileges and liberties of director of the said Kehoe Stenograph Company and during the entire time that the said Robert Y. Slater remained in the State of Delaware he used and continued to use the franchises, offices, privileges and liberties of director of the said Kehoe Stenograph Company, to the great damage and prejudice of the State of Delaware, and much of the testimony given in the said cause of *Martin Lippman v. Kehoe Stenograph Company* by the said Robert Y. Slater was for the purpose of attempting to show a right on the part of the said Robert Y. Slater to use the offices, privileges and liberties of director of the Kehoe Stenograph Company."

The other affidavits disclose, in substance, the same as to Charles W. Slater and Henry C. Dunlap.

The court considering that the question of law contained in the petition ought to be heard by the court in banc, did, on the joint application of the parties, direct the same to be so heard. It was agreed by and between the parties respectively by and through their counsel respectively that the judgment of the Superior Court entered in pursuance of the opinion of the court in banc should be final.

The question of law raised, was argued before the court in banc, PENNEWILL, C. J., BOYCE, CONRAD, RICE and HEISEL, J. J., sitting.

ARGUMENT IN SUPPORT OF THE MOTION TO VACATE THE SERVICE.

8 *Bacon's Abridgement*, 158, defines privileges:

"Privilege is an exemption from some duty, burden, or attendance, with which certain persons are indulged, from a supposition of law, that the stations they fill, or the offices they are engaged in, are such as require all their time and care." See note also; also *Black's Law Dictionary; North River Steamboat Co. v. Livingston*, 1 *Hopkins Chancery*, 149, 203.

In *Poole v. Gould*, 1 *Hurl & N.* 99, which was an application similar to the present, except, in that case the plaintiff was an individual instead of a sovereign state, the court said:

"The rule must be discharged. Without giving encouragement to litigation or oppressive acts, we ought to take care that the service of process is not set aside on slight grounds. Every opportunity ought to be afforded to persons to serve debtors with writs."

In *Bunce v. Humphrey*, 108 *N. E.* 95, it was said:

Arguments.

" * * * It is not only a natural right, but it is in derogation of the common natural right which every creditor has to collect his debt by subjecting his debtor to due process of law in any jurisdiction where he may find him. The privilege should therefore not be extended beyond the reason of the rule upon which it is founded."

No reason can be found by me where privilege has been claimed or where privilege has been granted, wherein the king or sovereign state has been the party plaintiff.

The *Brooks case*, 3 *Boyce* 1, 79 *Atl.* 790, is the sole exception and this point was not raised in that case.

In 8 *Bacon's Abridgement* 182, it is said: "Where an action is brought by the King, the defendant shall not have privilege."

See, also, 2 *Rolles Abr.* 274; 17 *Viner's Abr.* 517; *Kirkham v. Whaley*, 1 *Ld. Raymond* 27; *In re Doughlass*, 2 *Q. B.* 825, 837; *Wharton's Law of Evidence*, Sec. 389 (*2nd. Ed.*).

In *Queen v. Seale*, 5 *El. & Bl.* 1, 85 *E. C. L.* 1; in considering whether an information in the nature of a *quo warranto* came within the English Common Law procedure of 1852, CROMPTON, J., during the argument, said:

" It will not be argued that *Sec.* 148 of the *Common Law Procedure Act*, 1852, includes all criminal proceedings: it will be said, that an information in the nature of a *quo warranto* has the character of a civil proceeding."

The court in deciding the matter by LORD CAMPBELL, C. J., said:

" * * * The Act was passed, not with a view of varying the law, but for the purpose of altering and regulating the mode of procedure. *Quo warranto* could not be included, unless all indictments were so. The proceeding is not a civil one: the allowance of inspection does not show that it is."

In *Rex v. Archbishop of York*, *Willes* 533, it was held, that under the *Statute 4 Anne C.* 16 *S.* 4, two pleas could not be pleaded where the King was a plaintiff. That was an action of *quare impedit*. *State v. Roe*, 26 *N. J. L.* 215.

This proceeding is by the sovereign State of Delaware, inquiring of the defendants by what authority they severally support

their claims to the office of director of Kehoe Stenograph Company, a corporation of the State of Delaware.

In Delaware, as held in *Brooks v. State*, 3 *Boyce* 1 (36), 79 *Atl.* 790, this proceeding retains its prerogative character and is instituted on behalf of the sovereign state, and in such instances the defendant is not entitled to have privilege. But even if defendants were entitled to privilege they must be deemed to have waived the exemption.

The affidavits disclose that the defendants, Robert Y. Slater, Charles W. Slater and Henry C. Dunlap, at the time that they were served with process in this proceeding were using the franchises, offices, privileges and liberties of director of the said Kehoe Stenograph Company and continued so to do during the entire time they remained in the State of Delaware, and that much of the testimony given by them in the *Lippman case* was for the purpose of attempting to support an alleged right to act as directors of the said Kehoe Stenograph Company. This fact under the broad principle precludes them from claiming any privilege. *Shiras in Nichols v. Horton*, 14 *F.* 327, 330-331; *Iron Dyke Copper Min. Co. v. Iron Dyke R. Co.*, 132 *Fed.* 208.

The principle running through the case of *Mullen v. Sanborn*, 25 *L. R. A. (Md.)* 721, is the same as the one now advanced by the State of Delaware.

An information in the nature of a *quo warranto* is the only efficacious and specific remedy to determine disputed questions of title to a public office. It must be remembered that the office of director in a Delaware corporation is a public office; that the unlawful holding of such office constitutes a public wrong (*Brooks case, supra*), and a ruling that the defendants were exempt from the service of process, when the rule was served upon them in this case, would be in effect a decision that the sovereign state of Delaware has power to grant franchises, but has not the power to see that such franchises are used only by the persons rightfully entitled thereto under the grant.

It is further submitted, that there can be no public policy involved which would permit a witness in a cause between individuals to assert a claim of privilege of exemption from service of

Arguments.

process in any case wherein the sovereign state of Delaware calls upon a person, using one of its public offices to show his title thereto. *Com. v. Dillon,* 61 *Pa. St.* 488; *Reed v. C. O. Cal.,* 65 *Me.* 53.

### ARGUMENT AGAINST THE MOTION.

Our contention is, that the question involved in this motion comes within the general rule, to wit, that "Suitors and witnesses coming from foreign jurisdictions for the sole purpose of attending court, whether under summons or subpoena or not are held immune from service of civil process while engaged in such attendance and for a reasonable time in coming and going." 32 *Cyc.* 429; *Brooks v. State,* 26 *Del.* 1, 79 *Atl.* 790; *Skinner, etc., Co. v. Waite,* 155 *Fed.* 828; *Read v. Neff,* 207 *Fed.* 890; *Person v. Grier,* 66 *N. Y.* 124; *Richardson v. Smith,* 65 *Atl.* 162, 163 (*N. J.*); *Taylor on Evidence,* Sec. 1330; *Bacon's Abr. Privilege,* B2; *Halsey v. Stewart,* 4 *N. J. L.* 362; *Nichols v. Horten,* 14 *Fed.* 330; *Larned v. Griffens,* 12 *Fed.* 590; 1 *Foster's Fed. Pr. Sec.* 98; *Brooks v. Farrell,* 4 *Fed.* 166; *Matthew v. Tufts,* 87 *N. Y.* 568; *Harkness v. Hyde,* 98 *U. S.* 476; *Martin v. Bacon,* 88 *S. W.* 863; *Barber v. Knowles,* 82 *N. E.* 1065; *Kauffman v. Kennerdy,* 25 *Fed.* 785; *Wilson Sewing Machine Co. v. Wilson,* 22 *Fed.* 803; *Childerston v. Barratt,* 11 *East* 439; *Ex parte Tilottson,* 2 *Stark.* 470; *Perose v. Perose,* 5 *H. of L. Cas.* 671; *Fidelity &c. Co. v. Everett,* 25 *S. E.* 734; *Letherby v. Shaver,* 41 *N. W.* 677; *Mitchell v. Huron,* 19 *N. W.* 176; *St. Paul First Nat. Bank. v. Ames,* 39 *N. W* 308; *Sherman v. Gundlach,* 33 *N. W.* 549; *Ela v. Ela,* 36 *Atl.* 15; *Mulhearn v. Press Pub. Co.,* 21 *Atl.* 186; *Sewanee Coal Co. v. Williams,* 107 *S. W.* 968; *Small v. Montgomery,* 23 *Fed.* 707; *Atchison v. Morris,* 11 *Fed.* 582; *Bishop v. Vose,* 27 *Conn.* 1; *Lewis v. Miller,* 74 *S. W.* 691; *Parker v. Marco,* 136 *N. Y.* 585; *Cameron v. Roberts,* 87 *Wis.* 291, 41 *Am. St. Rep.* 43; *Andrews v. Lembeck,* 46 *Ohio* 38, 15 *Am. St. Rep.* 547; *Bolguino v. Gilbert Lock Co.,* 73 *Md.* 132, 25 *Am. St. Rep.* 582; *Fisk v. Westover,* 4 *S. D.* 233, 46 *Am. St. Rep.* 780; *Cooper v. Wyman,* 122 *N. C.* 784, 65 *Am. St. Rep.* 731; *Hicks v. Besuchet,* 7 *N. D.* 429, 66 *Am. St. Rep.* 665; *Linton v. Cooper,* 54 *Neb.* 438, 69 *Am. St. Rep.* 727; *Note to Worth v. Norton,* 76 *Am. St. Rep.* 534; *Murray*

*v. Wilcox,* 97 *N. W.* 1087, 101 *Am. St. Rep.* 263; *Baldwin v. Emerson,* 16 *R. I.* 304, 27 *Am. St. Rep.* 741.

In *Brooks v. State, supra,* while the witness under the particular circumstances was held not immune from service, the court laid down the general principles governing in a case like this. Brooks was not a witness. The hearing was on affidavits —an argument—and he could have given no testimony.

The respondents, Robert Y. Slater, Charles W. Slater and Henry C. Dunlap, were present as witnesses to give and did give, oral testimony at great length. *Andrews v. Lembeck, supra.*

The relator contended that the general rule did not apply in the present instance for the reasons; *first,* that the claim of privilege could not be raised against the state, and, *second,* that the respondents waived the privilege by an alleged user of the corporate franchises, offices and privileges while within the state and at the time of the service of the rule upon them.

The privilege can be raised against the state. *Quo warranto* is a civil proceeding. The relator argued that an information in the nature of *quo warranto* is a criminal proceeding. There is no ground for any such claim. *Constantineau on De Facto Doctrine, Secs.* 452, 453; See, also, *Ames v. Kansas,* 111 *U. S.* 449, 460. *Rex v. Marsden,* 3 *Burr.* 1812; 32 *Cyc.* 1414.

If this proceeding is a criminal one it should be brought before the Court of General Sessions, *Sec.* 3798, *Rev. Code* 1915, and an indictment be found. That it is not a criminal proceeding is further shown by the following authorities: *Brooks v. State, supra; Woolley on Del. Prac., Par.* 1670; *High on Extraordinary Remedies, p.* 621. On investigation it will be found, that most of the cases cited by the relator are from cases purely criminal— arrests for crime. We do not contend that in such a case, privilege may be claimed. The privilege has been claimed and allowed against the state. *U. S. v. Edme,* 9 *S. & R. (Pa.)* 147, is one of the leading cases on the law of privilege. In this case the defendant was arrested on a capias from the Federal Court, while returning from attendance as a witness before a magistrate. The defendant claimed privilege from arrest.

It was argued that privilege is not available against the United States.

It was held that in civil suits by the United States, there is the same privilege to suitors and witnesses as the law gives in actions by one citizen against another. In *Atty. Gen'l. v. The Shumers Company, Ex parte Watkins*, 8 *Sim.* (*Eng.*), 377 (1837), Watkins was arrested while on his way home from the House of Lords. He was held privileged.

The tendency of our courts has not been to restrict the privilege, but rather to liberally extend its application.

*In re Healy*, 53 *Vt.* 644, 695; *Bogliano v Glbert Lock Co. supra; Schlesinger v. Foxwell*, 1 *N. Y. City Ct.* 461; *Merrill v. George*, 23 *How. Pr.* (*N. Y.*) 331, *Lamkin v. Starkey* , 7 *Hun.* (*N. Y.*) 479; *Larned v. Griffin*, 12 *Fed.* 590, 592; *Hale v. Wharton*, 73 *Fed.* 739, 740, 741.

The reason for the rule is probably nowhere more effectively illustrated than in the present instance. One of the respondents herein is William J. Kehoe, of Washington, D. C., the inventor of the Kehoe Stenograph Machine and the person most interested in the litigation involving that machine, of which litigation this proceeding is a part. After the other respondents had been served with the rule herein, Kehoe declined to come to Delaware to testify before the Chancellor, much to the embarrassment of the respondent in that case.

So with the respondent Biedler, who resides in, and is a business man of, New York City. It was to prevent just such a situation and a possible failure of justice that the rule of privilege was established and is so universally recognized.

To say that while the respondents may claim the privilege against a private individual, they may not claim it against the state, is to accuse the state of violating, for its own purposes, one of its most well established rules.

When a state as a plaintiff, voluntarily comes into court and invokes its aid, she is bound by all the rules established for the administration of justice between individuals, and the suit is governed by the same rules as private suits. 36 *Cyc.* 907; *Port Royal, etc. R. Co. v. So. Carolina*, 60 *Fed.* 552, 553.

That the state is the real party is a fiction.

The real parties, as disclosed by the affidavits herein, are Strauss, McLaughlin and Walsh.

A court, in an extraordinary proceeding, such as *quo warranto*, will not let a fiction hide the real facts.

The respondents have not waived the privilege.

The respondents were witnesses in the case of *Lippmann v. Kehoe Stenograph Company*, a corporation. The respondents were not doing a single act in Delaware in relation to the corporation, except appearing as witnesses in the corporation's behalf.

The respondents, in their affidavits, state that their sole purpose in coming into the state was to testify as witnesses—not in their own behalf—they were not parties. But even if they were parties, the rule of privilege would extend to them.

Whether or not the respondents were using the franchises, offices and privileges of the corporation is the main question to be decided in this *quo warranto* proceeding and is not yet in issue.

Relator claims that respondent's testimony "was for the purpose of attempting to support an alleged right to act as directors," and thus they were using the franchises, offices and privileges of the corporation. It is admitted that while all the respondents were served with the rule on February 2, 1916, none of them testified before the Chancellor until February 8, 1916.

The cases of *Nichols v. Horten*, 14 *Fed.* 327, 330; *Iron Duke etc. Co. v. Iron Duke R. Co.*, 132 *Fed.* 208, and *Mullen v. Sanborn*, 25 *L. R. A* 721, lend no support to relator's contention.

We contend that all the respondents who were served were exempt from service, and that the service should be vacated.

PENNEWILL, C. J., delivering the opinion of the court in Banc:

On application of the Attorney General the Superior Court in and for New Castle County on the first day of February, A. D. 1916, ordered the issuance of a rule against the above named defendants to show cause, if any they had, why an information in the nature of a writ of *quo warranto* should not be filed against them, the rule being made returnable on the first day of the March term.

On the return of the rule, counsel for Henry C. Dunlap, Robert Y. Slater, Charles W. Slater, and Erasmus B. Waples, the defendants, asked leave of the court to appear specially for the purpose of moving to vacate the sheriff's return of service of the rule upon the said parties, because they were exempt from service of process upon them under the circumstances set out in the affidavits filed in this cause.

The facts disclosed by the affidavits are not conflicting in the statement of the material facts. They disclose, that service of the rule was made on Henry C. Dunlap, Robert Y. Slater and Charles W. Slater on February second between 9:20 and 9:25 o'clock a. m. That at eleven o'clock on the second day of February, 1916, the taking of testimony in the case of *Lippman v. Kehoe Stenograph Company*, a corporation of the State of Delaware, was begun before the Chancellor. That Charles W. Slater came to Wilmington from Washington on the first day of February. That Henry C. Dunlap, who resides in or near Philadelphia, came to Wilmington early in the morning of the second day of February. That R. Y. Slater, who resides in the City of Philadelphia, came to Wilmington on the first day of February, or shortly after midnight of that day. That each of these persons claimed to be directors of the said Kehoe Stenograph Company, and each of them testified in said cause as a witness for the defendant. That Robert Y. Slater was called as a witness in said cause on the eighth day of February, Charles W. Slater on the tenth day of February, and Henry C. Dunlap on the fourteenth day of February. That their presence here was requested by counsel acting for the defendant in said cause. A subpoena was issued in the cause at the direction and request of solicitors who were acting for the defendant on the third day of February, the day following service of the rule.

[1] In the case of *Brooks v. State*, 3 *Boyce*, 1, 79 *Atl.* 790, 51 *L. R. A.* (*N. S.*) 1126, *Ann. Cas.* 1915*A*, 1133, the Supreme Court said:

"The privilege of parties to judicial proceedings, as well as witnesses, attorneys, judges, jurors and certain other officers of the court, of going to the place where they are held, and remaining as long as necessary and returning wholly free from the restraint of process in other civil proceedings, has been long settled and liberally enforced. The rule is of ancient origin and is

mentioned in the Year Books as early as Henry VI. It came to us out of the common law with only such modifications as were required to make its principle harmonize with American institutions and to be in accord with American jurisprudence.

"The rule is based upon reason and was established for a purpose which has been consistently adhered to from the early English authorities down through the modern American authorities upon the subject. The reason of the rule is the proper administration of justice and its purpose is to protect that administration from embarrassments and interruptions caused by disturbance to those whose attendance upon the courts is compelled by duty or necessity. The rule was established for the protection of the courts that they might the better administer justice, free from interference with and intimidation of suitors, solicitors and witnesses and disturbance of the court's officers in the exercise of their duties, and became a privilege that affected persons in their several capacities only as their protection from process rendered the administration of justice more certain and complete. The privilege arises out of the authority and dignity of the court, it is founded on the necessities of judicial administration, it has for its primal object the protection of the court and not the immunity of the person, and is extended or withheld only as judicial necessities require."  *  *  *

Whether the privilege shall or shall not be extended depends upon the facts in each particular case.

The tendency has been not to restrict but to enlarge the right of privilege so as to afford to parties and witnesses attending in good faith any legal tribunal, full protection from all forms of civil process during their attendance at court, and for a reasonable time in going and returning.    *Larned v. Griffin* (C. C.) 12 Fed. 592.

Another court has said:

"The reason for the exemption is placed on grounds of public policy and the due administration of justice, and there we are content to leave it."

It was said in *Barber v. Knowles, 82 N. E. 1065, 14 L. R. A. (N. S.) 663, 11 Ann. Cas. 1144:*

"The only question to be considered is whether the defendant was honestly using his privilege, or whether he only sets it up as a pretension to defeat a creditor. The rule is not to be scanned with too strict an eye. Every reasonable intendment is to be made in favor of a party claiming exemption under it."

In *Parker v. Marco, 136 N. Y. 586, 32 N. E. 989, 20 L. R. A. 45, 32 Am. St. Rep. 770,* the defendant, who had been sued in the Federal Court in South Carolina, was asked by the plaintiff to be present at the taking of depositions before a Notary Public in New

18

York to be used in the suit in South Carolina. The defendant appeared, but for some reason the depositions were not taken. While he was there, however, he was served with a summons in an action brought by the plaintiff in that state for the same cause of action that was at issue in the Federal Court in South Carolina. The court held that the service was properly set aside.

From certain expressions used by the court in the *Brooks case*, as well as in other cases, it might be thought that the privilege of a witness is based upon the annoyance, interruption and delay the service of process might cause the court in the trial of the particular cause in which the witness came to testify. But that is not the real ground upon which privilege is based. It is rather the broad ground of public policy, and the general administration of the law. The mere service of a summons upon a witness in a particular case, even during the trial, would not ordinarily interfere with the court in the conduct of that case; but if parties and witnesses knew that under the law of the state into which they are asked to go, they would be subject to service of process in any other case, they would refuse to attend, and in that way the administration of the law in that jurisdiction might be very seriously affected in many cases.

Nowhere is the reason for the privilege more clearly stated than in *Martin v. Bacon*, 76 *Ark*. 158, 88 *S. W*. 863, 113 *Am. St. Rep*. 81, 6 *Ann. Cas*. 336, wherein the court said:

"If citizens of other states are allowed to come into our jurisdiction to attend court as parties or witnesses, and to freely depart from it, the adminis-'tration of justice will be best promoted, since a defendant's personal presence is often essential to enable his counsel to justly conduct his defense. * * * While coming and departing, as well as while actually in necessary attendance at court, he should be free from the hazard of being compelled to answer in other actions. It is an evidence of respect for our laws and confidence in courts that he comes here to litigate, and the laws he respects should give him protection. If he can come only under the penalty of yielding to our jurisdiction in every action that may be brought against him, he is deprived of a substantial right. * * * High consideration of public policy requires that the law should encourage him to fully enter our forums by granting immunity from process in other civil actions, and not discourage him by burdening him with the obligation to submit to the writs of our courts if he comes within our borders."

Quoting from another case, the same court said:

"And the reason [for the exemption]—the main reason—is very poten-
tial, so far as our country is concerned.  There are many states,  *  *  * and
a man who is required to go from one to the other, either as a witness or as a
party to a suit, should not be pursued by writ while abroad, instead of being
sued at his own residence, otherwise, every one as is stated in many of those
opinions, would avoid as far as possible being subjected thousands of miles
away to suits of this character."

The right of privilege has been more liberally extended
because it works no hardship to plaintiff; for if the service is
vacated, plaintiff is in no worse position than he would have been
had the witnesses stayed out of the state because of fear that they
might be served with other process while in the state.

The affidavits show that the defendants came into this state
at the request of counsel for the purpose of testifying in a case
before the Chancellor and for no other purpose.  And it also
appears that they were not here an unreasonable time before the
taking of testimony was commenced, or after their own testimony
was concluded.

But the plaintiff claims that the general rule does not apply
to the defendants for three reasons:

1.  Because they wrongfully attempted to exercise a fran-
chise of this state by giving testimony in support of their right
to office to which they had no title, to wit, directors of Kehoe
Stenograph Company, a corporation of this state.

2.  Because the process served upon them by the sheriff,
and which they seek to vacate, was issued in a criminal proceed-
ing in which the State of Delaware is party plaintiff.

3.  Because, even if the proceeding be a civil and not a
criminal one, the state is nevertheless the party plaintiff.

[2]  In respect to the first reason we say, it is immaterial in
the present motion what the character of the defendants' testi-
mony was provided they acted in good faith, and their testimony
was material to the cause.  We can see no reason why a director
cannot testify in support of his title to such office without for-
feiting or waiving his exemption from the service of process in
another suit, even though it involves the same issue.  There is
nothing to satisfy this court that the defendants knew they were
seeking, by their testimony, to establish an unjust or illegal claim;

and nothing to indicate that they were guilty of any fraud, collusion or other improper motive in coming into the state or in giving their testimony. As appears from cases above cited, it can make no difference that the same issue is involved in both cases; or that the defendants' title to their offices were in dispute. That is an issue that cannot be tried in this motion; and besides the information has not yet been filed. The pending proceeding is only a rule to show cause why an information should not be filed.

[3] In respect to the second reason urged by plaintiff against defendants' privilege, it need only be said that it cannot now be successfully claimed that an information in the nature of a *quo warranto* is a criminal action. It very clearly appears from the *Brooks case* above referred to, as well as from the pleadings and recognized practice in a *quo warranto* proceeding in this state, that it is to all intents and purposes a civil action, although the state is nominal plaintiff, and the Attorney General, relator.

And little need be said respecting plaintiff's third reason mentioned above.

[4] Under the practice that now prevails in this state the state is the nominal plaintiff in an information in the nature of a *quo warranto*. Originally the state or King was the real plaintiff. The relator is still the Attorney General in cases where individual directors are seeking by means of this ancient writ to oust others who claim to be entitled to the offices. But surely in such a case the state is not the party in interest. The form of the action and name of party plaintiff have not been changed, but the state merely permits its name to be used so that individuals may try the title to an office which they claim has been unlawfully usurped by others. It is only in such an action that such an issue can be tried, and the form of the action has not been changed. Private counsel, as a matter of course, represent the real plaintiff, and neither the state nor its representative, has or shows the slightest interest in such a case as the plaintiff seeks to file.

Under the well-settled law respecting privilege, the court are of the opinion that Henry C. Dunlap, Robert Y. Slater and Charles W. Slater, three of the defendants, were exempt from the service of the rule made upon them by the sheriff in this case.

It is ordered that the foregoing opinion and decision be and it is hereby certified to the Superior Court, New Castle County.

The opinion being so certified, the Superior Court made an order in accordance therewith, and later in the term, Judges RICE and HEISEL, sitting, upon motion of Hugh M. Morris, Esq., the rule to show cause was made absolute as against Erasmus B. Waples and as against him leave was granted to file the information.