NORTHUMBERLAND INSURANCE CO., Ltd., a corporation of the State of New South Wales, Australia, and Stratford Insurance, Inc., a corporation of the State of Delaware, Plaintiffs Below, Appellants,

v.

Nathan WOLFSON; William Emmons; James B. Thompson; Thomas J. Sherman; Interstate Reporting Service, Inc., a corporation of the State of Pennsylvania; United States Motors Corp., a corporation of the State of Delaware; Concord Auto Centre, Inc., a corporation of the State of Delaware; Newark Auto Exchange, a corporation of the State of Delaware; General and Mercantile Underwriters Agency Corp., a corporation of the State of Missouri, Defendants Below, Appellees.

Supreme Court of Delaware.

Feb. 4, 1969.

See also, Del., 246 A.2d 709.

William J. Wier, Jr., of Connolly, Bove & Lodge, Wilmington, for plaintiffs below, appellants.

Clement C. Wood, of Allmond & Wood, Wilmington, for General and Mercantile Underwriters Agency Corp., defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

■ The motion to dismiss the appeal is denied. As will appear hereinafter, the order below involved substantial legal rights of the parties. It is, therefore, appealable though interlocutory. Wagner v. Shanks, 6 Storey 555, 194 A.2d 701 (1963).

■ The question presented on this appeal is whether a non-resident, while in this State under subpoena for the purpose of appearing as a witness before a Federal Grand Jury, has the privilege of immunity from process arising out of a civil suit then pending in the Delaware Court of Chancery.

I.

An action had been brought in the Chancery Court by Northumberland Insurance Co., Ltd. and Stratford Insurance, Inc. against several individual and corporate defendants, charging fraudulent insur-

ance activities. After the complaint was filed, General and Mercantile Underwriters Agency Corp. (hereinafter "General") was joined as an additional party defendant. The Court held ineffective an attempted service upon General, a Missouri corporation with no resident agent in Delaware, by service on certain individual defendants as its agents.

Thereafter, Theodore Clutz, a resident of Kansas and President of General but not a defendant in the Chancery case, came to Delaware in response to a Federal subpoena to testify as a witness before a Federal Grand Jury in connection with a criminal prosecution in which he was not a party. On the day of his appearance before the Grand Jury, in another effort to obtain service on General in the Chancery case, Clutz was served as President of General with summons, copy of the complaint, a notice of the taking of his deposition, and a subpoena duces tecum. Clutz and General promptly moved to quash the service on the ground that at the time thereof he was immune from civil process. The Chancery Court granted the motion. The plaintiffs appeal and General moves to dismiss the appeal.

## II.

■ It has long been settled in this State that a non-resident appearing here as a witness in a civil case, when his appearance is a matter of duty or necessity to the court, will be granted the privilege of immunity from service of process issued in another civil action. In Brooks v. State ex rel. Richards, Atty. Gen., 3 Boyce 1, 79 A. 790, 51 L.R.A., N.S., 1126 (1911), this Court stated that the "reason of the rule is the proper administration of justice and its purpose is to protect that administration from embarrassments and interruptions caused by disturbance to those whose attendance upon the courts is compelled by duty or necessity"; that the "privilege arises out of the authority and dignity of the court, it is founded on the necessities of judicial administration, it has for its primal object the protection of the court and not the immunity of the person, and is extended or withheld only as judicial necessities require"; that the "privilege or exemption from service of process is extended and is limited to those persons whose duty requires their attendance upon the court and whose presence is necessary to the court in the performance of its function of administering justice, * * *." See also State ex rel. Wolcott, Atty. Gen. v. Biedler (Court in Banc) 6 Boyce 262, 99 A. 278 (1916).

In both the *Brooks* case and the *Biedler* case, however, the witness appeared in this State (1) to testify in a civil case and (2) voluntarily, without subpoena. The question then becomes this: does the rule of the *Brooks* case become inapplicable when, as here, the witness comes into the State (1) to testify in a criminal proceeding,* and (2) under subpoena? We think not.

The reason for the exemption, i. e., the promotion of the administration of justice, is the same whether the witness comes into the State to testify in a criminal case or in a civil case. In either kind of case, it is in the best interests of the administration of justice to "conduce to obedience" all witnesses so that they will appear and testify with the least possible hardship, expense, and delay. The protection of the immunity, as an instrumentality for the benefit of the courts, is equally useful and effective in criminal cases as in civil. There is no valid reason, in our opinion, for limiting the exemption to witnesses in civil cases. Compare United States v. Conley (D.Mass., 1948) 80 F.Supp. 700, 702.

Turning to the effect of a subpoena upon the rule of the *Brooks* case, the appellants contend that the privilege should extend only to witnesses who come into the

---

* No distinction is made, for present purposes, between an appearance as a witness before the Grand Jury and an appearance before the Court of which the Grand Jury is an arm. See Annotation, 35 A.L.R.2d 1353.

State voluntarily; that since Clutz came here under subpoena, he was compelled to come and, in view of such compulsion, he is not entitled to the immunity. We disagree.

The test of voluntariness is often applied to the immunity rule on the ground that the rationale of the privilege is to encourage voluntary attendance of witnesses who might stay away for fear of service of process in other litigation. See I.C.C. v. St. Paul Transportation Co. (D.Minn., 1966) 39 F.R.D. 309; Annotations, 20 A.L.R. (2d) 163, 180–183; 35 A.L.R.2d 1354, 1363–1365. It appears to our satisfaction, however, that the criterion of voluntariness is historically incorrect and unsupported by reason.

The privilege was originally granted to those who came involuntarily in response to subpoenas. Judge Learned Hand demonstrated that proposition in Dwelle v. Allen (S.D.N.Y., 1912) 193 F. 546. There, as here, the non-resident was in the State pursuant to a subpoena to appear as a witness before the Federal Grand Jury when he was served with process in a State civil case. The plaintiff contended that the privilege was not available to the witness because he was under subpoena. Judge Hand quashed the writ and, in holding that the privilege extends to witnesses appearing under subpoena, stated that his review of the early English cases showed not that a subpoena avoided the privilege—rather "that the question a hundred years ago was whether voluntary appearance did not avoid the privilege." Stating that the "plaintiff's position is a strange inversion of the history of the law", Judge Hand wrote:

"No distinction is made anywhere in the cases, as far as I can find, between a witness under subpoena and one appearing voluntarily, and the proper test is not, I think, whether the appearance be voluntary or not, but whether the privilege will promote the purposes of justice. It would certainly be a strain upon one's confidence in the sanctions of process to say that the privilege would not conduce to obedience."

Extending that rationale, it seems clear that one who comes into our State as a witness in response to a court's express invitation and command should have at least as much protection at the hands of our courts as one who comes without such invitation and command. Also, we note that there have been cases (elsewhere we hasten to add) wherein the subpoena has been used fraudulently and as a ruse to bring non-residents into a State for the purpose of obtaining service of process in other litigation. If the issuance of a subpoena were to mean loss of the exemption, that type of threat to the integrity of the process would exist.

The appellants rely upon Webb v. O'Rourke, Del., 189 A.2d 74 (1963). That case involved non-resident defendants in criminal prosecutions who were in Delaware, under bail, attending arraignment or trial when served with civil process. The Superior Court there held that non-resident defendants in criminal actions were not entitled to the privilege. The *Webb* case is inapposite because it involved defendants in criminal actions and not merely witnesses. A sharp line of demarcation has been drawn on the basis of that difference. E. g., United States v. Conley (D.Mass., 1948) 80 F.Supp. 700; Feuster v. Redshaw, 157 Md. 302, 145 A. 560 (1929); Ryan v. Ebecke, 102 Conn. 12, 128 A. 14, 40 A.L.R. 88 (1925); Annotation, 20 A.L.R.2d 163. We limit our holding in this case to non-resident witnesses, and expressly withhold opinion as to the application of the exemption to non-resident parties.

■ We conclude that voluntariness is not the criterion for the privilege. Our holding is consonant with the "duty to the court" element of the *Brooks* rule. It is also in harmony with the Uniform Act to Secure Attendance of Witnesses, 11 Del.C. § 3524(a), which provides that a person who comes into the State in obedience to a summons issued under the Act (not the

situation in the instant case) to attend and testify here, "shall not while in this State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons." We consider that Act, in effect in this State since 1937, as indicative of a public policy protecting persons who, either voluntarily or in response to summons or subpoena, come within the State as witnesses in criminal cases.

\* \* \*

For the reasons stated, the order of the Chancery Court is affirmed.